EZRA DOWNER *vs.* DYER L. CHESEBROUGH AND ANOTHER.

.A promissory note was made and endorsed in blank in the state of New York, where it was payable. By the law of New York no agreement different from that which the law infers from a blank indorsement can be proved by parol. In a suit on the note against the endorser in this state it was held that parol evidence of a special agreement, different from that implied by law, would be received.

The evidence by which a contract shall be proved is no part of the contract itself and is governed therefore by the *lex fori* and not by the *lex loci contractus.*

ASSUMPSIT, on the defendants' endorsement of a promissory note; brought to the Superior Court in New London county and tried to the jury before *Minor, J.*

The note was as follows:—" Oswego, N. Y., Nov. 25, 1865. Two months after date we promise to pay to the order of Chesebrough and Leavens Two Hundred Dollars, at the First National Bank, value received.     THOMPSON BROTHERS."

Endorsed—" CHESEBROUGH & LEAVENS."

The defendants filed the following plea:—

The defendants plead and say that the plaintiff ought not to have and maintain his said action against them, because they say that prior to the date of said note in said declaration mentioned, they were indebted to the plaintiff for goods be-

fore that time purchased by them of one Ashley, the agent of the plaintiff, and that the said Ashley, as such agent, inform- ed them that if they would sell certain property which they then had in the village of Oswego, in the state of New York, to the makers of said note, he would take the same in pay- ment for said claim due from the defendants as far as it went, and that he should be satisfied with said note in payment. That relying upon said agreement they did sell said proper- ty to the said parties, and took in payment for said sale the note aforesaid; and that they shortly after called upon the plaintiff to settle with him, and presented to him said note in part payment of said account, which the plaintiff then and there accepted as such payment, in pursuance of said agree- ment, and then and there requested the defendants to endorse the same to enable him to collect said note when due, and stated that said endorsement was only for collection, and that they should never hear from it; and that in compliance with said request they then and there endorsed said note, for the purpose aforesaid and no other; which they are ready to verify; wherefore they pray judgment if the plaintiff ought to have or maintain his said action against them.

The plaintiff traversed this plea, and the case was tried up- on that issue. The jury rendered a verdict for the defend- ants, and the plaintiff filed a motion in arrest of judgment for the insufficiency of the plea, the questions arising upon which were reserved for the advice of this court.

*Wait* and *Bolles*, in support of the motion.

1. If parol evidence of a different contract of endorsement from that implied by law would be admissible in this state, provided the note had been made and was to have been paid here, yet as the note was made and to be paid in the state of New York, the contract of endorsement must be governed by the law of the latter state. *Everett* v. *Vendryes*, 19 N. York, 436; *Lee* v. *Selleck*, 33 id., 615; *Smith* v. *Mead*, 3 Conn., 253; *Philadelphia Loan Co.* v. *Towner*, 13 id., 249; *Hale* v. *New Jersey Steam Navigation Co.*, 15 id., 546. According to the law of New York parol evidence is inad-

missible to alter the legal effect of this indorsement. *Bank of Albion* v. *Smith,* 27 Barb., 489; *Thompson* v. *Ketcham,* 8 Johns., 190; *Pattison* v. *Hull,* 9 Cow., 747; *Payne* v. *Ladue,* 1 Hill, 116; *Seabury* v. *Hungerford,* 2 id., 80; *Prosser* v. *Luqueer,* 4 id., 420; *Hall* v. *Newcomb,* 7 id., 416; 2 Parsons on Notes & Bills, 519, 521. If the foregoing propositions are true, it is clear that the defence to this note cannot be sustained, and judgment should be rendered for the plaintiff, notwithstanding the verdict of the jury.

2. To this claim of the plaintiff the objection is made that the admissibility of the evidence is determined by the *lex fori* and not by the *lex loci contractus.* It is true that if a foreign creditor comes into Connecticut to pursue his debtor he must seek the remedy which this state prescribes. *Medbury* v. *Hopkins,* 3 Conn., 472; *Atwater* v. *Towrtzend,* 4 id., 47. But that rule does not apply to the question at bar. At the time when Kent wrote his commentaries he regarded this question as unsettled. 2 Kent Com., 3d ed. 462, note *b.* No analogy can be drawn from the application of statutes of limitation " on the general ground that the whole question of limitation or prescription is one of process and remedy, and not of right and obligation." 2 Parsons on Contracts, 5th ed., 590. *Decouche* v. *Savetier,* 3 Johns. Ch., 190. But where a contract was made and to be performed in New York, and a suit was brought thereon in Massachusetts, and the defence claimed that the contract was within the statute of frauds of Massachusetts, it was held that the plaintiff might be permitted to introduce evidence to take the contract from the operation of the statute of frauds of New York. *Denny* v. *Williams,* 5 Allen, 1. The rule of the *lex fori* should not govern in this case, according to Judge Story. Story Confl. of Laws, § 634 *a; LeRoy* v. *Crowninshield,* 2 Mason, 151. The same rule is adhered to in Louisiana. *Clark's Exrs.* v. *Cochran,* 3 Martin, 353, 360. In this case the court said : " We believe it to be admitted as a principle, in all tribunals, that the *lex loci,* or law of the country where the contract is made, ought to govern in suits commenced in any other country on such contracts; and it appears by a law of the *Partidas,* that this

principle extends even to the proof of the contract, expressed
in general terms, which might perhaps be applied to the mode
of proving facts as well as to the amount of evidence necessa-
ry to their verification." The English rule seems to be that
where a personal contract made in a foreign country is sought to
be enforced in the English courts of law, so much of the law as
affects the rights and merits of the contract, all that relates
*ad litis decisionem*, is adopted from the foreign country; so
much of the law as affects the remedy only, all that relates
*ad litis ordinationem*, is taken from the *lex fori* of that coun-
try where the action is brought.    *Huber* v. *Steiner*, 2 Bing.
N. C., 202; *Tulloch* v. *Hartley*, 1 Younge & Coll., N. C.,
119; *Yates* v. *Thomson*, 3 Clark & Finn., 544; *Don* v.
*Lippmann*, 5 id., 1, 15, 17; *Bain* v. *Whitehaven & Fur-
ness Junction Railway Co.*, 3 House of Lords Cas., 1, 19. All
doubt on this question would seem to be removed by the de-
cision of this court in *Koster* v. *Merritt*, 32 Conn., 246.

*Halsey*, contra.

1. As between the immediate parties, parol proof is always
admissible to show the purpose for which the endorsement
was made, or the actual contract entered into. *Pike* v. *Street*,
Mood & Malk., 226; *Perkins* v. *Catlin*, 11 Conn., 213; *Cas-
tle* v. *Candee*, 16 id., 223; *Case* v. *Spalding*, 24 id., 578;
*Rey* v. *Simpson*, 22 How., 349; 2 Parsons on Notes & Bills,
518, 519, 520.    Story on Prom. Notes, § 138.

2. The course of procedure must be according to the law
of the forum where the suit is instituted. 2 Parsons on Notes
& Bills, 326; Story Confl. Laws, § 634 *a*.    The admis-
sion of evidence and the rules of evidence are rather matters
of procedure than matters attaching to the rights and titles of
parties under contracts, deeds and other instruments, and
therefore they are to be governed by the law of the country
where the court sits.    Story Confl. Laws, 634 *a*, 635 *b*, 635 *c*;
2 Parsons on Notes & Bills, 375; Browne on Frauds, §
136; *Leroux* v. *Brown*, 14 Eng. Law & Eq., 247; *Yates* v.
*Thomson*, 3 Clark & Fin., 544; *Don* v. *Lippmann*, 5 id.,
15, 17; *Bain* v. *Whitehaven & Furness Junction Railway*

*Co.*, 3 House of Lords Cases, 1, 19; *Wynne* v. *Jackson*, 2 Russ. 351; *Ludlow* v. *Van Rensselaer*, 1 Johns., 94; *James* v. *Catherwood*, 3 Dowl. & Ry., 190; *Fant* v. *Miller*, 17 Gratt., 48.

3. The legal effect of a blank indorsement upon such a note as this, is the same in New York as it is in this state. It is said that as a rule of policy the courts in that state will not admit parol evidence to vary the legal effect of the contract. In this state the policy is the other way. By the rule of evidence in both courts the contract which has been proved here is a good defence. The only difference is in the evidence required to prove it. It has been proved here by competent evidence, and bars the action.

PARK, J. The indorsement in this case was made in the state of New York on a note payable there, and consequently the laws of that state must govern the contract, so far as its nature, obligation and interpretation are concerned. While this is true in relation to the *lex loci contractus*, it is equally true that the *lex fori* must govern the course of procedure in giving redress upon the contract. Story's Confl. Laws, § 342; 2 Parsons on Notes & Bills, 326; *Wood* v. *Watkinson*, 17 Conn., 500.

If this cause had been tried in the state of New York, no doubt the defendants' plea would have been held insufficient upon general demurrer, upon the ground that the parol contract therein stated could not alter or vary the legal import of the blank indorsement.

In the case of *The Bank of Albion* v. *Smith*, 27 Barb., 489, the court say: "An indorsement in blank imports in law a precise and definite undertaking on the part of the indorser to pay the note upon condition that payment shall be demanded of the maker, and notice of non-payment given to each indorser in the manner prescribed by law. It is in legal effect a promise in writing. Our courts in this state have uniformly held that the legal import of a written undertaking was a part of the contract, and could no more be varied or contradicted by parol than it could had such legal import been

already and fully expressed in the instrument." The cases of *Seabury* v. *Hungerford*, 2 Hill, 80, and *Hall* v. *Newcomb*, 7 Hill, 416, are to the same effect. Such is the law of the state of New York in regard to the legal import of blank indorsements, established by their courts on grounds of policy, in order to prevent fraud and perjury. To this end it is held that the legal import of such indorsements can no more be varied by parol than written contracts can be in ordinary cases. This of course is not on the ground that such indorsements are in contemplation of law written contracts, for in that case if there was a special written contract varying from the implied contract, there would be two written contracts, conflicting in terms, made at the same time, between the same parties, in reference to the same subject matter. Suppose *A* should indorse a note in blank and at the same time should make a special contract of indorsement and commit it to writing upon a separate paper, which is accepted and received as such contract. Now if the blank indorsement is considered in legal contemplation a written contract, what shall be said of the other, in a suit between the same parties? And which must prevail if the contracts conflict? This shows that the decisions in the state of New York must be construed as we have considered them. If then we rightly understand the common law of that state upon this subject it becomes important to consider in what light their courts regard parol contracts of indorsement, in suits between the parties. Are they void *ab initio*, or is a recovery precluded upon them because the evidence of their existence is so uncertain? No case has been cited where this question has been directly decided, and we are therefore to look at the mischief which their courts had in view and were seeking to remedy in holding that no parol evidence of contracts of indorsement can be received to alter or vary the legal import of blank indorsements. Obviously the mischief sought to be avoided is that which arises from the infirmity of human nature in correctly recollecting the particular terms of a contract after a length of time, and the willful misrepresentations that are so often made where the facts are clearly remem-.

bered ; and the uncertainty of obtaining by reason of death or otherwise all the evidence that may throw light upon the transaction.

This is the basis of all the distinction between written and unwritten evidence that everywhere prevails, and no doubt governed the courts in the cases cited. Statutes of limitations and of frauds and perjuries that exist everywhere, are based upon the same ground.

Now suppose the parol contract in this case had been committed to writing by the parties in the state of New York upon a separate paper, subsequently to the indorsement, not with the view of making a new contract, but a mere recitation of the terms and conditions of the indorsement. In a suit between these parties in that state would the courts hold the contract valid or not, when the written evidence was offered to prove its existence? If *A* indorses a note in blank to-day pursuant to a contract by parol, which is committed to writing by the parties to-morrow, will it prevail so far as they are concerned? It is easy to see that none of the mischief exists in the case that prompted the decision referred to.

Mischief and remedy go hand in hand. When the mischief ends the necessity of the remedy ceases to exist, and the remedy therefore should no farther be applied.

The statute of frauds and perjuries declares that no action shall be brought on a contract not to be performed within one year from the making thereof, unless the contract or some note or memorandum thereof is in writing, signed by the party to be charged therewith. It has been held that this statute does not make void the contract to which the limitation applies. It affects the remedy merely.

The 4th section of the English statute of frauds is of this description, and in the case of *Leroux* v. *Brown*, 14 Eng. Law & Eq. R., 247, it is held that an action cannot be maintained in the courts of England upon a parol contract made in France which was not to be performed within one year from the making thereof, although the contract was valid by the laws of France. The case turned upon the question

whether the statute made void such contracts. If it made them void, then inasmuch as the law of France governed the contract the suit could be maintained ; but if the statute applied to the remedy merely, then inasmuch as the law of England governed the course of procedure, no recovery could be had. The court were unanimously of the opinion that the statute applied to the remedy and the non-suit that had been entered in the case was sustained.

If this decision is law, then the converse of the legal proposition must be true. If the statute of frauds had existed in France at the time the contract was made, but not in England when the suit was brought, the action would have been sustained, although it could not have been by the law of France. Such a case would be similar in principle to the present one. Statutes of limitation are placed upon the same ground, and have ever been held as applying to the remedy merely.

No good reason can be shown why the common law of the state of New York should go farther in relation to parol contracts of indorsements for the protection of the rights of parties, than these statutes do for the preservation of similar rights from the apprehension of similar mischief; and we think we may safely conclude that parol contracts of indorsement are not void by the laws of that state. If such contracts are not void, then it follows that the question is one of evidence. The courts of New York require written evidence before they will be satisfied that any other contract was made but the one implied by law from the blank indorsement, while the courts of this state may be convinced of the truth of such fact by parol.

Must the courts of this state be governed by the law of the state of New York in regard to the kind of evidence necessary to prove such fact, because this contract was made there ? The decisions upon this subject are not uniform; but we think the weight of authority, as well as sound principles of reason, are in accordance with the rule that questions of evidence are governed by the law of the forum. In the case of *Bain* v. *Whitehaven & Furness Junction Railway Co.*, 3 House

of Lords Cases, 1, Lord Brougham says, "As to the stipulations of a contract made abroad our courts are bound by foreign law, which must be to them a matter of fact. But it is a totally different thing as to the law of evidence. The law of evidence is the *lex fori* which governs the courts. Whether a witness is competent or not, whether a certain matter requires to be proved by writing or not, whether certain evidence proves a certain fact or not, this is to be determined by the law of the country where the question arises, where the remedy is sought to be enforced, and where the court sits to enforce it."

Story in his Conflict of Laws, page 827, says, "And perhaps it may be stated as a general truth, that the admission of evidence and the rules of evidence are rather matters of procedure than matters attaching to the rights and titles of parties under contracts, deeds and other instruments, and therefore they are governed by the law of the country where the court sits." Parsons, in his second volume on Bills & Notes, says, "It is hardly necessary to state that the law of the forum must control the admissibility of evidence, and not only its admissibility but its effect." See also Browne on Frauds, § 136; *Yates* v. *Thomson*, 3 Clark & Fin., 544; *Don* v. *Lippmann*, 5 Clark & Fin., 15.

Any other view of the law would lead to endless perplexity. Evidence merely informs the court what contract was made. It has nothing to do with the obligations imposed by the agreement. Parties are presumed to contract in accordance with the law of the place where a contract is made. The law forms a part of it. But can it be said that the parties contract in regard to the mode by which its terms and conditions shall be made known to the court if a suit should be brought on the contract? If a party is an incompetent witness in a state or country where a contract is made must his evidence be rejected in a state or country where parties are allowed to testify, and *vice versa?* Cases may be supposed where perhaps evidence may be so connected with the terms of a contract that it may be difficult to separate them, and perhaps in such cases a distinction should be made; but

in a case like the present one, we are clearly of the opinion that the evidence forms no part of the contract made by these parties, but its admissibility is governed by the law of the forum.

We therefore advise the Superior Court to overrule the motion in arrest and render judgment on the verdict.

In this opinion the other judges concurred.