3 Dec.                      CONFLICT OF LAWS.
444

[Mahoning Circuit Court, March Term, 1895.]

†JAMES McCANN V. THE PENNSYLVANIA CO.

LAW OF OHIO AS TO RULES OF EVIDENCE, GOVERNS IN AN ACTION BROUGHT IN AN OHIO
COURT WHERE THE PARTIES BOTH RESIDE AND THE CAUSE OF ACTION AROSE IN AN
OTHER STATE.

In an action by an employee of a railroad company against the latter to recover damage
for a personal injury alleged to have been caused by the negligence of the defendan
company, it was alleged in the pleadings and appeared at the trial, that both the plain
tiff and defendant were residents of, and that the injury occurred in, the state of Penn
sylvania, and that a portion of the defendant's line of railroad extended into Ohio.

At the trial of such action, the evidence tended to prove that a certain appliance on on
of the defendant's cars was defective and that the plaintiff received his injury by
reason thereof, and also tended to prove that the plaintiff was required to do work of
and around such defective car by reason of the orders of another of defendant's em
ployees who had power and authority to direct and control plaintiff, and who was also
a resident of, and performed his work for defendant in the state of Pennsylvania.

Held: That the law of Ohio prescribes the rules of evidence that must govern at the
trial of such case, and therefore, the second section of the act of the general assembly
of Ohio, passed April 2, 1890, 87 O. L., 149, applies to such action, and not the law of
the state of Pennsylvania.

ERROR to the court of common pleas of Mahoning county.

FRAZIER, J.

The case of *James McCann* v. *The Pennsylvania Company*, is a petition in
error, the object of which is to reverse the judgment of the court of common
pleas. I will not read the pleadings in the case, but shall endeavor to state their
substance so far as I deem them material to the questions at issue, and in some
instances probably, in language or words different from that used by the
pleader.

The plaintiff in error, who was the plaintiff below, on the 27th day of Octo-
ber, 1891, filed in the court of common pleas of Mahoning county his petition, in
which he states that he is a resident and citizen of the state of Pennsylvania,
and that the defendant now is, and during all the dates and times therein men-
tioned, was a public railroad corporation, duly and legally incorporated and organ-
ized under and by virtue of the laws and statutes of the state of Pennsylvania,
and as such corporation was in possession of, running and operating a line of
public railroad between the city of Youngstown, in the county of Mahoning, and
state of Ohio, and the city of Pittsburg, in the state of Pennsylvania. That on
said line of railroad in the state of Pennsylvania, at the time of the injury to
the plaintiff as complained of, there was a station called Wampum. That there
was then and for a long time prior thereto had been connected with said line of
railroad, and used and operated by said defendant as a part thereof, a railroad
which extended from said station, or a point on said line near thereto, a distance
of about three miles, to coal mines called the Clinton mines, from which defendant
as a common carrier took coal to market for the owners thereof. That on the
7th day of May, 1890, and prior thereto, plaintiff had been in the employ of the
defendant as brakeman; that on said day defendant had in its possession, and
was then using, and for a long time prior thereto had been using in the prosecu-
tion of its business a freight or gondola car, the number of which plaintiff can-
not give. That the iron stirrup placed upon said car and used for getting on
said car was on said day, and for a long time prior thereto had been, as said de-
fendant knew or ought to have known, wholly unfit for use, and in a dangerous
condition. That it was loose from its fastenings to such an extent that on pres-
sure it moved back and forth under the car when any one attempted to use it for
the purpose of getting thereon. That the tracks of said railroad to said mine at

* The judgment in this case was affirmed by the Supreme Court: opinion, 54 O. S., 10; Shauck, Burket
and Spear, JJ., dissented. The circuit decision is distinguished in 5 Circ. Dec., 366.

the point where plaintiff was injured was then, and for a long time had been, as defendant well knew or ought to have known, wholly unfit for use, and in a dangerous condition. That the rails and ties, and the fastenings of the rails were old and worn out, and the ballast between and under the ties insufficient to keep them in place, and the rails at the joints were not perfectly fastened, so that the rails sunk down; when a car was passing it would strike the end of the next rail and severely jar it. That plaintiff in the discharge of his duty attempted to get on this car, and set his right foot in the stirrup and caught hold of the hand-hold on the car, and thereby raised himself from the ground, when the stirrup moved backwards under the car, and brought his leg against the car, and prevented his foot from fully entering the stirrup, and just at that moment, and while plaintiff was in that position, the wheels of the car came to a joint in said track, and in passing over the same so badly jarred and jolted the car and stirrup and plaintiff, that his foot slipped out of such defective stirrup, and he was thereby thrown violently to the ground and in front of the wheels, which ran over his left leg, and so badly injured it that amputation was necessary; that plaintiff received his injuries as the direct result of the gross carelessness and negligence of the defendant, and without any negligence or want or care on his part.

The defendant, by its answer, admits its corporate existence and the operation of the line of railroad extending between the points designated in said petition. It admits that on or about the 7th day of May, 1890, the plaintiff received an injury while in its service as a freight brakeman, but it denies each and every other allegation of the petition, and says that the injury sustained by the plaintiff as aforesaid, was caused solely by reason of his own negligence while in the service of the defendant as aforesaid.

For reply, the plaintiff denies that the injury sustained by him was caused by his own negligence while in the service of the defendant.

Upon these issues a trial was had, and on the first day of July, 1892, a verdict returned for the plaintiff. The defendant filed a petition in error in this court, and while the cause was pending in error, the plaintiff below, to conform his pleading to the decision in the case of *Coal and Car Co.* v. *Norman*, 49 Ohio St., 598, decided by the supreme court after the trial of this case, on the 22d day of March, 1893, filed in the court of common pleas, by leave thereof, an amendment to his petition as follows:

"Now comes the plaintiff, and by leave of the court, after judgment, and files his amendment to his original petition, and says, that at the time he was injured he did not know, nor did he know at any time prior thereto, nor did he then or at any time prior thereto have any means of knowing, that said stirrup and said track, at the point of said accident, was in a dangerous and defective condition, as alleged in his original petition."

Upon suggestion of diminution in this court, the court of common pleas sent up and certified as a part of the record, said amendment filed March 22, 1893, and upon a hearing, upon the record as amended, this court reversed the judgment and remanded the cause to the court of common pleas. On the 14th day of August, 1894, plaintiff, by leave of the court of common pleas, filed in said court a second amendment to his petition, in which he says, in substance, that on the 7th day of May, 1890, and for a long time prior thereto, said defendant had maintained in connection with the operation of said railroad, and other railroads of which it was then in possession, a large railroad yard at Lawrence Junction, in the county of Lawrence, and state of Pennsylvania, and then had a large number of men in its employ in said yard, and had therein a yardmaster, who had full charge of, and control over all said men and all its employees who had occasion to be in said yard in the discharge of their duties, under their contracts of employment with said defendant, and who had lawful power and authority, at will. to hire and discharge all employees of defendant who worked in said yard, and some employees who worked elsewhere on said railroads; that under the rules of said

defendant, it was the duty of said yardmaster to make up, or cause to be made up, all trains to be sent out over defendant's said railroads, with power and authority to select from the employees of defendant, the men who were to operate them, and to see that cars are inspected, and those needing repairs sent to the shop. That on the 7th day of May, 1890, said yardmaster made up, or caused to be made up, a train of fifteen freight or gondola cars, and placed therein said car with the defective stirrup, and ordered the crew, of which plaintiff was a brakeman, to place them at said coal mine; that at the time said yardmaster placed said car in the train and gave orders and directions to plaintiff and said crew, he knew, or ought to have known, that the stirrup was defective and dangerous; and says that said yardmaster failed to inspect or have said car inspected. That the dangerous and defective condition of said stirrup was open and obvious, and that any sort of a proper or reasonable inspection would have readily disclosed its condition; that directly in consequence of the faults herein stated, in connection with the facts stated in the original petition, said plaintiff received the injuries in his original petition described, and without any fault on his part and without any knowledge on his part of said defective stirrup.

The defendant, for answer to the second amendment to the petition, says it admits that on said 7th day of May, 1890, it had and maintained, in connection with the operation of said railroad and other railroads of which it was then in possession, a railroad yard at Lawrence Junction, in the county of Lawrence and state of Pennsylvania, and that it had charge thereof; but says that said yardmaster and plaintiff were under the direction of, and controlled by the superintendent of said railroads, and further, it denies each and every other allegation in said second amendment to the petition.

And for a second defense says, that the plaintiff ought not to have or maintain this action on account of any alleged negligence on the part of said yardmaster at Lawrence Junction, Pennsylvania, for the reason that the liability of the defendant herein is to be determined solely by the law of Pennsylvania, and that under the law of that state, as determined by the supreme court of the state of Pennsylvania, said yardmaster was a co-employee with said plaintiff, and for his negligence resulting in injuries to the plaintiff this defendant would not be liable.

The plaintiff, by way of reply thereto, denies that he and said yardmaster were under the direction and control of the superintendent of said railroads in and about their work in said yard, and avers that said yardmaster had the sole control of said yard, and of all the men who worked therein, and of all the work done therein, and denies that the liability of the defendant herein is to be determined by the laws of Pennsylvania; but avers that the liability of the defendant is to be determined by the law of Ohio; and denies that under the law of Pennsylvania, as determined by the supreme court of that state, said yardmaster was a co-employee with said plaintiff, and for his negligence resulting in injuries to the plaintiff, the defendant would not be liable.

To try the issues thus made, a jury was impaneled, and the evidence of the plaintiff being heard, the defendant thereupon moved the court to arrest the testimony from the jury and for judgment, which motion was sustained by the court and the evidence withdrawn from the jury, and judgment rendered against the plaintiff for costs. A bill of exceptions was taken setting out all the evidence and rulings of the court, and plaintiff filed in this court a petition in error to reverse said judgment.

It is shown by the record that the plaintiff introduced testimony tending to prove that the stirrup on the car in question was loose and defective at the time of the accident to the plaintiff as alleged, and also tending to prove that plaintiff received his injury by reason thereof, and also tending to prove that the yardmaster at Lawrence Junction, in the state of Pennsylvania, in the employ of said defendant, had power and authority to direct and control some of the other employees of said company while in said railroad yard, and it is as a matter of fact

admitted in the record that Lawrence Junction and "Possum Hollow," the latter being the place of the accident, are both in the state of Pennsylvania.

This court has heretofore held, adopting the rule announced by the supreme court of Pennsylvania in the case of *Mixter* v. *Imperial Coal Co.*, 152 Penn., St. 395, that independent of, and before the passage of the act of April 2, 1890, " in order that the employer may be held liable to an employee for negligence arising from some defect in the machinery or appliances used by the employee at the time of the accident, it is not enough to show that the defect existed at the moment of the accident. It must also appear that the master had an opportunity of previous knowledge, or that the facts were such that he ought to have known of the defect.

" In an action by a brakeman to recover damages for personal injuries, evidence that the brake was out of order at the time of the accident, and that the plaintiff was thereby unable to control the car so that it ran away with him, is insufficient in itself to establish the negligence of the master."

One question presented, and the main contention of counsel is, whether the act of April 2, 1890, 87 Ohio Laws, 149, controlled in this case. It is contended by the plaintiff that the second and third sections of the act are remedial only, and that they are applicable to the proceeding in this action.

Counsel for the defendant contend that the plaintiff and the defendant being citizens of and the injury occurring in the state of Pennsylvania, that the act of the legislature of Ohio can have no extra territorial effect, and cannot control or affect the rights or liabilities of the parties for a right accruing or liabilities incurred in the state of Pennsylvania. It is said by SCOTT, J., in *Lehman* v. *McBride*, 15 Ohio St., 608 : " It is undoubtedly true that legislative enactments can only operate *proprio vigore* upon persons and things within the jurisdiction of the law-making power."

And Justice STORY, in his Conflict of Laws, section 7, says : " It is plain that the laws of one country can have no intrinsic force *proprio vigore*, except within the territorial limits and jurisdiction of that country. They can bind only its own subjects and others who are within its jurisdictional limits, and the latter only while they remain therein." This principle is sustained in the cases of *Steamboat Ohio* v. *Stunt*, 10 Ohio St. 582 ; *Booth* v. *Hubbard*, 8 Ohio St., 243 ; *Stetson* v. *The City Bank of New Orleans*, 2 Ohio St., 174 ; *Woodward* v. *The Michigan Southern and Northern Indiana Railroad Company*, 10 Ohio St., 122 ; and *Hover's Administrator* v. *The Pennsylvania Co.*, 25 Ohio St., 667. From the foregoing and other authorities, it may be said that if the act attempts to grant a right or give redress for a wrong for which there was before no redress, it can have no extra-territorial effect. It is held in *Kanaga* v. *Taylor*, 7 Ohio St., 134, " by the law of comity between different states the *lex loci contractus* controls as to the validity and construction of personal contracts, though not as to the remedy and rule of evidence ; nor where it clashes with the rights of our own citizen or the policy of our own laws." In *Templeton* v. *Kraner et al.*, 24 Ohio St., 554, it is held, "under the grant of legislative power in the constitution the general assembly has complete control over the remedies which are to be afforded to parties in the courts of this state ; and if the remedies provided do not interfere with vested rights, such effect must be given them as will carry out the intents of the law-making power." Rohrer on Inter-State Law, page 52, says, " the law of the forum, the place where suit is brought, governs as regards the remedy in the enforcement of contracts ; thus, contracts made in one state and enforced by suit in another, whether made in expectation of performance in such latter state, or made without any designated place of performance, as for instance a general promise to pay a sum of money, are governed in their legal enforcements by the laws of the place where the suit is brought, as to all things pertaining to the remedy.

" In the language of the United States supreme court, matters respecting the remedy, such as the bringing of suits, admissibility of evidence, and statutes of limitations depend upon the law of the place where the suit is brought.

" Pleadings and evidence are matters strictly appertaining to the remedy, and

in respect to their sufficiency and admissibility come within the rule of being governed by the law of the forum or place where the trial is had. The case here cited very fully illustrates the application of the principle. It was an action in the court of Iowa upon a sealed instrument for the payment of money executed in the state of Maryland, an instrument of such a character as is usually termed a writing obligatory. The common law rule was shown to have prevailed in Maryland by the pleadings at the date of the instrument, and that thereby the consideration for which the instrument was given could not be brought in question by a plea of want of consideration.

"But the court held to the contrary, and the supreme court of Iowa affirmed the decision upon the principle that the question was one as to the remedy merely, and was governed by the law of the forum which had abolished the common law distinction, and permitted the consideration of sealed as well as unsealed instruments to be inquired into by pleadings and evidence. In this case the supreme court of Iowa, DILLON, J., says: 'The plaintiff must take such remedy as our laws afford him; respecting what shall be good defenses to action in this state, its courts must administer its own laws, and not those of other states, and our act allowing the defense of want of consideration to be pleaded to all actions on subsequent sealed contracts, is a matter relating to the remedy, and does not impair the obligation of the contract within the meaning of the authoritative adjudication of the supreme court of the United States.'"

Justice STORY, in his Conflict of Laws, section 556, says: "We are next led to the consideration of the question in what manner suits arising from foreign causes are to be instituted, and proceedings had until the final judgment. Are they to be according to the law of the place where the parties, or either them, live? Or are they to be according to the modes of proceedings and forms of suit prescribed by the laws of the place where suits are brought? Fortunately, here there is scarcely any ground left open for controversy, either at the common law or in the opinions of foreign jurists, or in the actual practice of nations. It is universally admitted and established that the forms of remedies and the modes of proceeding, and the execution of judgments, are to be regulated solely and exclusively by the laws of the place where the action is instituted; or as the civilians uniformly express it, accordingly to *lex fori*." And again, in section 557, he says: "The jurisprudence of one nation may be very refined and artificial, with a multitude of intricate and perplexed proceedings; that of another may be rude, uninformed and harsh, consisting of an undigested mass of usages. It would be absolutely impracticable to apply the process and modes of proceedings of the one nation to the other. Besides, there would be an utter confusion in all judicial proceedings by attempting to engraft upon the remedies of one country those of all other countries whose subjects should be parties or be interested therein. No tribunal on earth, however learned, could hope, by any degree of diligence, to master the laws and processes and remedies of all other nations, and the qualifications and limitations properly belonging thereto. A whole life might be passed in obtaining little more than a few unconnected elements; and litigation would thus become immeasurably complicated, if not absolutely interminable. All that any nation can, therefore, be justly required to do, is to open its own tribunals to foreigners, in the same manner and to the same extent as they are opened to its own subjects; and to give them the same redress, as to rights and wrongs, which it deems fit to acknowledge in its own municipal code for natives and residents."

Again, in section 558, in stating the doctrine of the common law, he says: "But the forms of remedies and the order of judicial proceedings are to be according to the law of the place where the action is instituted, without any regard to the domicile of the parties, to the origin of th' 'ight, or the country of the act."

Wharton on the Conflict of Laws, second e. ition, section 752, says: "There can be no question that the *lex fori* is also to determine the competency and weight of evidence adduced to prove a litigated case." And again, in the same section, "the court in which such case comes to be tried, must direct its own pro-

cedure." In *Downer* v. *Chesebrough*, 4 American Reports, 29 (36 Conn., 39), it is held: "In an action in Connecticut against an indorser of a promissory note, made and indorsed in blank in New York where it was made payable, *held* that evidence of a special parol agreement, that the indorsement was only for collection, was admissible, although, by the law of New York, a parol contract cannot be introduced in evidence to change the legal import of a blank indorsement. The *lex fori* governs as to the proof of the contract, the *lex loci contractus* as to the *obligations* of the contract." In *Hoadley* v. *The Northern Transportation Co.*, 15 American Reports, 106, (115 Mass., 304), it is held: "A common carrier may, by an express contract, exempt himself from liability for loss happening without his fault. If the law of the place where a contract, signed only by the carrier, is made for the carriage of goods, requires evidence other than the mere receipt by the shipper to show his assent to its terms, and the law of the place where the suit is brought presumes conclusively such assent from acceptance without dissent, the question of assent is a question of evidence, and is to be determined by the law of the place where the suit is brought."

We hold, where an action is rightfully brought and prosecuted in the courts of this state, the rules of evidence prescribed by the statutes of Ohio are to govern on the trial of such action, without regard to the origin of the cause, or the place of the act; and that the second section of the act of April 2, 1890, 87 Ohio Laws, 149, applies to this action.

Upon the question whether in reviewing the record, we are to regard the yardmaster at Lawrence Junction and the plaintiff as co-employees, or whether the yardmaster is a "superior" within the meaning of the third section of the act aforesaid.

It is admitted by the pleadings, that the defendant was on the 7th day of May, 1890, operating a line of railway, partly within the state of Ohio, and partly within the state of Pennsylvania. If the railroad yard at Lawrence Junction had been located in, and the injury to plaintiff received within the state of Ohio, and the authority and control of the yardmaster over the other employees of the company, proved as stated in the second amendment to the petition, the yardmaster, by reason of the third section of the act of April 2, 1890, 87 Ohio Laws, 150, would not be a co-employee of the plaintiff.

The act has been construed by our supreme court, in *Railroad Company* v. *Margrat*, 51 Ohio St., 130, and *Railroad Company* v. *Erick*, 51 Ohio St., 146.

Upon the question sought to be made, whether under the law of the state of Pennsylvania, as determined by the supreme court of that state, the yardmaster at Lawrence Junction was a co-employee with the plaintiff, for whose negligence resulting in injury to the plaintiff, the defendant would not be liable.

The laws of another state, and the decisions of their courts, or their existence when they come in question in the courts of this state, must be proved by evidence as matters of fact, nor can they be regarded by a reviewing court, when not made part of the record sought to be reviewed. Revised Statutes, section 5244, *Ingraham* v. *Hart*, 11 Ohio St., 225; *Smith* v. *Bartram*, 11 Ohio St., 690; *Evans* v. *Reynolds*, 32 Ohio St., 163; *Whelan* v. *Kinsley*, 26 Ohio St., 131; *Larwell* v. *Hanover Savings Fund Society*, 40 Ohio St., 274; *Williams* v. *Finlay*, 40 Ohio St., 342; *Alexander* v. *Pennsylvania Company*, 48 Ohio St., 623.

We find in the record no evidence of any decision of the supreme court of Pennsylvania, and are not officially advised that any such decision exists, and consequently, the question is not properly presented, whether, under the law of Pennsylvania, as decided by the supreme court of that state, the yardmaster and the plaintiff are co-employees.

In arresting the testimony from the jury, and giving judgment against the plaintiff for costs, there is manifest error, for which the judgment of the court of common pleas is reversed, and the cause remanded for a new trial.

Geo *F. Arrel*, Wm. *T. Gibson* and R. B. *Murray*, for Plaintiff.

J. R. *Carey*, W. C. *Boyle* and A. W. *Jones*, for Defendant.