FRANKLIN SUGAR REFINING COMPANY, Appellant, *v.* STANISLAUS LIPOWICZ and Others, Respondents.

Fourth Department, March 23, 1927.

Sales — action by seller for breach of contracts of sale of sugar — sugar broker procured order from individual defendant, which was accepted by plaintiff in Pennsylvania — broker was buyer's agent — contracts providing for sale f. o. b. point of shipment were Pennsylvania contracts — Statute of Frauds of Pennsylvania, which does not make contracts void, has no application — enforcibility of contracts must be determined by laws of this State — contracts complied with Statute of Frauds of this State — delays in shipment, existing over a year, were requested by buyer — during interval buyer had sold business to corporation defendant — letter from buyer to seller, advising seller " to proceed in accordance with your own judgment" constituted breach — damage was difference between contract price and market price at date of breach (Pers. Prop. Law, § 145) — both parties moved for directed verdict — findings not necessary under Civil Practice Act, § 440.

This is an action to recover damages for breach of contracts for the sale of sugar to the individual defendant. A sugar broker, who procured the order from the defendant, which order was accepted by the plaintiff at its office in Pennsylvania, was the agent of the buyer.

The contracts, which stipulated for the sale of the sugar f. o. b. point of shipment and that the delivery should be complete on receipt of the goods by the carrier, were made in Pennsylvania and were to be performed there.

The Statute of Frauds of the State of Pennsylvania (Uniform Sales Act, § 4) provides merely that a contract that does not comply with that statute " shall not be enforceable by action." The statute, since it does not provide that a contract which does not comply therewith shall be void, has no application to an action brought in this State against a resident of this State. The action must be determined by the laws of this State.

The contracts in question were for the purchase of sugar at the basis price of twenty-two and five-tenths cents per pound. Some of the contracts stated that the kind and quality was to be so many " barrels or equivalent," and in two of the contracts the grades and style of packing were indicated. The parol evidence at the trial showed the custom of the sugar trade, which custom, well known to the buyer and under which he had purchased sugar from the defendants for many years, was that the basis price meant the price per pound of fine granulated sugar in barrels and that the determination of the price for other grades of sugar was absolutely fixed by the application of fixed differentials.

That is, the price of lower grades of sugar was determined by subtracting the differential from the basis price. The custom also required the purchaser to notify the seller of the grades and style of packing he desired. The contracts, interpreted in the light of existing customs and usages of the trade, were not obscure or incomplete as to price, quantity and quality. The correspondence between the buyer and the broker with the seller, and an agreement between the buyer and the corporation defendant, to whom the buyer sold his business, taken together, furnish sufficient signatures to the memoranda of sale to satisfy the Statute of Frauds.

At the buyer's request the plaintiff delayed shipment for more than a year. During this interval the buyer had sold his business to the corporation defend- ant, which agreed to assume the contracts. After more than a year from the date of the sale, the buyer wrote to the plaintiff: " I cannot see what else I can do in this matter and would advise that you proceed in accordance with your own judgment." This letter constituted a breach of the contracts on the part of the buyer.

The measure of damage, since sugar is a commodity that may be readily sold in the market, is the difference between the contract price and the market price on the day of the breach. (Pers. Prop. Law, § 145.)

It was not necessary for the court to make findings as required by section 440 of the Civil Practice Act, for it appears that at the close of the trial both sides moved for a directed verdict and that it was understood and agreed in open court that when the justice disposed of the case and directed a verdict it was to be with the same force and effect as if a jury had then rendered the verdict.

SEARS, J., dissents in part, with opinion.

APPEAL by the plaintiff, Franklin Sugar Refining Company, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Erie on the 7th day of April, 1926, upon a verdict rendered by direction of the court after the jury was discharged, both parties having moved for a verdict.

*Moot, Sprague, Brownell & Marcy* [*Adelbert Moot, Joseph F. Abbott* and *Lester E. Waterbury* of counsel], for the appellant.

*Donovan, Raichle & Depew* [*Frank G. Raichle* and *Carlos C. Alden* of counsel], for the respondent Lipowicz.

*George L. Grobe,* for the respondents Union Liberty Company and another.

CLARK, J. This action as originally brought included the Union Liberty Wholesale Grocers, Inc., as one of the defendants, but the complaint was dismissed as to that defendant, and the action was continued against defendants Lipowicz and Union Liberty Company.

The case has been tried twice, the first trial resulting in a dis- agreement of the jury and on the second trial there was a judgment against the plaintiff in favor of each defendant for costs, the judg- ment being entered on a verdict directed by the court.

11

The action was brought to recover damages for defendants' breach of seven contracts, contained in seven sales memoranda for the purchase of refined sugar, said contracts having been entered into during the spring of 1920.

The plaintiff is a Pennsylvania corporation with its principal office located in the city of Philadelphia. The defendant Lipowicz resides in the city of Buffalo and the Union Liberty Company is an Illinois corporation.

These orders for sugar were given by Lipowicz in May and June, 1920, to R. H. Parker, who for many years had been a merchandise broker in Buffalo and had handled plaintiff's sugar in that territory. This broker when desiring to obtain orders would call upon his customers either by telephone or personally, and if they wanted sugar he would make out an order in triplicate on blanks furnished by plaintiff, which recited the fact that the goods were sold through R. H. Parker, the broker. These orders consisted of a white original, and an orange and a blue carbon copy. The white and orange papers were sent by the broker to plaintiff at Philadelphia but he retained temporarily the blue copy. On receiving the orders it was the custom of plaintiff, if it accepted them, to indicate that fact by placing an order number on both the white and orange copies, retaining the white and returning the orange to the broker at Buffalo, who would copy plaintiff's contract number onto the blue and then return it to the customer, in confirmation of the transaction.

Under the custom adopted by the parties, the orders when received by plaintiff from the broker were accepted by it at its place of business in Philadelphia. In signing the orders and transmitting them to plaintiff the broker was the agent of Lipowicz. The minds of the parties finally met with reference to the transactions when the orders were accepted by plaintiff and the place of acceptance would determine the place of the contract upon the facts in this case. (*Ohl & Company* v. *Standard Steel Sections, Inc.*, 179 App. Div. 637; Clark's N. Y. Law of Contracts, 42; 9 Cyc. 670.)

These offers and acceptances provided that the sugar should be delivered "f. o. b. Philadelphia," and that the delivery should be complete on receipt of the goods by the carrier.

Under the circumstances we are of the opinion that the place of the making of the contracts and the place designated in the orders for their performance was in the State of Pennsylvania.

The orders provided for the delivery of the sugar in July and August, 1920, or as soon thereafter as plaintiff could make deliveries, the assortments to be furnished to the seller by the buyer, but

subject to such substitutions as the seller might find it necessary to make.

In October, 1920, Lipowicz sold his grocery business to defendant Union Liberty Company. By the terms of their agreement the Union Liberty Company assumed the liabilities of Lipowicz, including the contracts in question. Later Lipowicz endeavored to have plaintiff release him from liability under these contracts, which plaintiff refused to do.

Prior to this time, on several occasions in July and August, and also in October, 1920, Lipowicz either by letter or in personal interviews had with plaintiff at its office in Philadelphia, requested plaintiff to delay deliveries under the contract and these requests were granted.

On the 15th day of December, 1921, Lipowicz wrote plaintiff that he did not see what else he could do in this matter and advised plaintiff to proceed in accordance with its own judgment.

Plaintiff contends that there was then a repudiation of the contract on the part of Lipowicz, whereupon it brought this action for damages based on the difference between the basis price of sugar, twenty-two and five-tenths cents per pound as specified in the contracts, and the market price on that date, which was five and two-tenths cents per pound.

On the trial defendants urged that the contracts were not enforcible under the Statutes of Frauds of either New York or Pennsylvania, which statutes had been pleaded as a defense, and introduced the Statute of Frauds of Pennsylvania in evidence, together with certain decisions of the courts of that State construing it.

Defendant Lipowicz was not sworn as a witness on the present trial and no oral testimony was given in behalf of defendants. After the defense rested each side moved for the direction of a verdict, and the court, with the consent of the parties, discharged the jury, and after due deliberation directed a general verdict in favor of defendants. This procedure seems to have been agreed to by all parties with the understanding that the decision of the court on the motions for a directed verdict should be with the same force and effect as if the jury had rendered a verdict at that time.

The decision of the court was to the effect that the Statute of Frauds of Pennsylvania was controlling, and that inasmuch as the courts of that State had held that contracts similar to the ones in question were not enforcible in Pennsylvania, the decisions of the courts of that State would control the situation here and that plaintiff could not maintain the action.

Plaintiff contends that the Statute of Frauds contained in the

Uniform Sales Act, as adopted in Pennsylvania, is not controlling and that the decisions of the courts of Pennsylvania under the facts in this case are not binding on the courts of this State.

Plaintiff further contends that the contracts were definite and certain, and that there was sufficient evidence by way of memoranda with reference to the contracts to satisfy the Statutes of Frauds in both States.

For the reasons heretofore stated it is our opinion that these were Pennsylvania contracts, but it is also our opinion that the Pennsylvania Statute of Frauds will not preclude plaintiff from prosecuting the action in this State where defendant Lipowicz is a resident.

The Pennsylvania statute (Uniform Sales Act, § 4) provides: "A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upwards *shall not be enforceable by action* unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

It will thus be seen that the Pennsylvania statute does not say that contracts which do not comply with its terms are void, but merely that they shall not be enforcible by action, and that means by action in the courts of Pennsylvania. (*Daniels* v. *Rogers*, 108 App. Div. 338.)

That being so, whether or not the contracts can be enforced by action must be determined by the laws of the State where the action is brought. (*Downer* v. *Chesebrough*, 36 Conn. 39; *Scudder* v. *Union National Bank*, 91 U. S. 406.)

In that case the court said: " Matters bearing upon the execution, the interpretation, and the validity of a contract are determined by the law of the place where the contract is made. Matters connected with its performance are regulated by the law prevailing at the place of performance. Matters respecting the remedy, such as the bringing of suits, admissibility of evidence, statutes of limitation, depend upon the law of the place where the suit is brought."

It follows that when the Pennsylvania statute says that certain contracts " shall not be enforceable by action," it does not pertain to the question of the validity of the contracts, but applies only to the remedy and as to that the law of the forum would control. (*Marie* v. *Garrison*, 13 Abb. N. C. 210, 303; *Franklin Sugar Ref. Co.* v. *Lykens Mercantile Co.*, 274 Penn. St. 206; *Daniels* v. *Rogers*,

*supra; Reilly* v. *Steinhart*, 217 N. Y. 549; *Downer* v. *Chesebrough,*
36 Conn. 39.)

It is our opinion, therefore, that these contracts made in the
State of Pennsylvania, not being void by the laws of that State,
can be enforced in an action brought in the courts of this State if
based upon sufficient evidence, and the evidence and procedure
for enforcement must be determined by the laws of this State.

The case of *Wilson* v. *Lewiston Mill Co.* (150 N. Y. 314), relied on
by respondents, is easily distinguishable from the case at bar.
That action was brought for damages for breach of an alleged
contract for the purchase of cotton.  The court found that the
contract, if any, was made in the State of Maine.  The contract
was an oral one and under the Statute of Frauds of Maine such a
contract was not valid, and it not being valid in the place where it
was made, it could not be enforced in this State.  It also appears
that it was practically conceded upon the trial in that case that the
contract was to be construed under the laws of Maine.

Here, while the contracts were made in Pennsylvania, they were
not void under the Pennsylvania Statute of Frauds and they can
be enforced here if justified by the evidence.  (*Daniels* v. *Rogers,*
*supra; Reilly* v. *Steinhart, supra; Downer* v. *Chesebrough, supra.*)

Were these contracts sufficiently definite and certain and was
there sufficient memoranda thereof signed by the party to be
charged to satisfy the Statute of Frauds of the State of New York?

The Statutes of Frauds in Pennsylvania and New York are
practically alike, the only substantial difference being that the
Pennsylvania statute has reference to contracts to sell or sales of
goods or choses in action of the minimum value of $500, whereas in
the New York statute the minimum is $50.  (See Penn. Sales Act
[Penn. Laws of 1915, p. 543, No. 241], § 4;* Pa. St. 1920, § 19652;
N. Y. Pers. Prop. Law, § 85, as added by Laws of 1911, chap. 571.)

It is unnecessary to quote extensively from the evidence, but
it is sufficient to say that the authority of Parker to represent
defendant Lipowicz in ordering this sugar of plaintiff is not now
seriously questioned, for respondents frankly concede in their
brief as follows: " It is not contended that the defendant did not
authorize the making by the broker Parker of the offers of purchase.
We feel that the question of initial authority in the broker becomes
immaterial in view of subsequent ratification, which in law relates
back and confirms the authority as of the time of the agent's act."

The contracts themselves show that the basis price for the sugar
was twenty-two and five-tenths cents per pound.  In five of the

---

* Since re-enacted by Penn. Laws of 1925, p. 311, No. 174, § 2; *Guppy* v. *Moltrup* (281 Penn. St. 343).— [REP.

contracts the kind and quality were stated as so many " barrels or equivalent," and in the other two contracts lists of the grades and style of packing are included in the instruments.

Parol evidence was received as to what these expressions meant and what the custom of the trade was in sugar transactions.

Lipowicz had been buying sugar of plaintiff for many years. The basis price named in these contracts was twenty-two and five-tenths cents per pound, and this meant per pound for fine granulated sugar in barrels f. o. b. Philadelphia. This fine granulated sugar was the basic grade and the price twenty-two and five-tenths per pound was the basis price. There are some fifteen grades of soft sugar and several grades of granulated, packed in different ways. The evidence shows that the price was fixed as soon as the basis price was known by application to that price of the proper differentials, and that it was the universal custom and usage in the sugar trade, well known to the parties to these contracts. For instance, certain kinds of soft sugar had minus differentials, and to arrive at the price of a particular grade of soft sugar the differential for that grade was subtracted from the basis price, while in the case of granulated sugar packed in cartons the differential for that particular sort of package was added to the basis price, and however much the basis price changed the differentials remained the same.

Under the terms of these contracts and by the custom of the trade, the purchaser was obliged to notify the refiner as to what grades and style of packing he desired, and then the refiner had the right to make substitutions as it found necessary.

The evidence is that the differentials rarely changed, so it was not at all difficult to accurately determine what price the purchaser was to pay for his sugar when the basis price was stated in the contract.

Respondents were familiar with this custom and knew that contracts were made with reference to the basis price and the differentials as testified to by the witnesses, and the contracts, explained by the witnesses as to the customs and usages of the sugar trade, left nothing obscure about the contracts. (*Franklin Sugar Refining Co.* v. *Mullen Co.,* 12 F. [2d] 885; *Milliken-Tomlinson Co.* v. *Am. Sugar Refining Co.,* 9 id. 809.)

The basis price of twenty-two and five-tenths cents per pound as stated in the contracts, together with the evidence of the trade custom with reference to differentials, made the contracts sufficiently definite and certain so the purchaser could know what price he was paying for sugar ordered, and the correspondence of defendant Lipowicz and the broker with plaintiff concerning the contracts, and the agreement between Lipowics and the Union Liberty Com-

pany relating to the sale of his business to that company wherein it was provided specifically that that company would assume certain liabilities of Lipowicz, including these contracts, which agreement was signed and acknowledged by Lipowicz, taken together furnish sufficient signatures to memoranda of these transactions to take them out of the Statute of Frauds. (*Marks* v. *Cowdin,* 226 N. Y. 138; *Spiegel* v. *Lowenstein,* 162 App. Div. 443; *Delaware Mills, Inc.,* v. *Carpenter Bros., Inc.,* 200 id. 324; affd., 235 N. Y. 537; *Franklin Sugar Refining Co.* v. *Mullen Co., supra.*)

The only remaining questions to be discussed are whether or not defendant Lipowicz breached the contracts, and the question of damages.

The contracts provided for delivery of sugar in the summer of 1920, the last delivery to be during September of that year, or as soon thereafter as possible.

In July, 1920, Lipowicz wrote plaintiff requesting it to hold for later shipment " several contracts for sugar which were to be shipped some time ago." The delay was granted by plaintiff. In August and again in October Lipowicz went to Philadelphia and arranged with plaintiff for still further delays. March 17, 1921, Lipowicz wrote plaintiff referring to the fact that in the previous October he had sold his business to the Union Liberty Company and that company had assumed and agreed to pay his liabilities, including the amounts due plaintiff.

There followed considerable correspondence between the parties and finally on the 31st day of August, 1921, plaintiff wrote Lipowicz requesting him to perform his contracts. On December 15, 1921, Lipowicz declined to do anything and wrote plaintiff as follows: "At the present time I cannot see what else I can do in this matter and would advise that you proceed in accordance with your own judgment."

This was a clear breach of the contracts on the part of Lipowicz and he did not deny the writing of that letter.

The sugar purchased by Lipowicz under these contracts was a commodity for which there is always an available market at some price, and that being so the measure of damages would be the difference between the contract price and the market or current price at the time of the breach of the contracts. (Pers. Prop. Law, § 145, as added by Laws of 1911, chap. 571, known as the Sales of Goods Act.)

It was established that there were about 679 barrels of sugar involved in this transaction which had not been paid for, and that the market price at Philadelphia December 15, 1921, was five and two-tenths cents per pound, so the loss would be the difference

between the contract price, twenty-two and five-tenths cents, and the market price, five and two-tenths cents, which would be seventeen and three-tenths cents per pound, and as computed by a witness called by plaintiff and undisputed the amount of damages would be $41,113.45.

Plaintiff contends that the court should have made findings as required by section 440 of the Civil Practice Act. This was unnecessary in view of the methods adopted at the trial.

At the close of the evidence both sides moved for the direction of a verdict. It was understood and agreed in open court that when the trial justice disposed of the case and directed a verdict it was to be with the same force and effect as if the jury had then rendered the verdict.

This was an action at law and the ruling of the court had the same force and effect as if a verdict had been rendered by the jury at that time. (*Glanzer* v. *Shepard,* 233 N. Y. 236.)

It was shown by the evidence that during the late war there was a sugar shortage and government agencies had charge of the distribution of sugar and regulated allotments that could be made. That practice continued under the advice of the government after its control ceased December 31, 1919. For a time the basis price remained the same, but finally when the government regulation of the distribution of sugar ceased, the basis price declined and changed from time to time with market conditions, but such changes had no effect upon the differentials which the evidence shows rarely changed.

In our opinion under this evidence these contracts did not come within the Statute of Frauds of this State, and being valid contracts are enforcible here.

The judgment should be reversed on the law and the facts, with costs, and judgment directed in favor of the plaintiff in the sum of $41,113.45, with interest thereon from the 15th day of December, 1921, with costs.

All concur, except SEARS, J., who dissents in part and votes for reversal and direction of judgment in favor of plaintiff for $13,260.45, with interest and costs, in a memorandum. Present — HUBBS, P. J., CLARK, SEARS, TAYLOR and SAWYER, JJ.

SEARS, J. (dissenting in part). I concur in the determination of the majority for a reversal of the judgment on the law and the facts, but favor directing a verdict for the plaintiff for the sum of $13,260.45.

As I read the record, the Statutes of Frauds of Pennsylvania and New York are interposed as a defense only to the causes of

action based on three of the seven contracts. Recovery is not sought in the complaint for a complete breach of the four other contracts but only for failure to take and pay for part of the goods covered by such contracts. The complaint shows partial deliveries and acceptances under each of these four agreements. Under such circumstances the Statute of Frauds even if pleaded would not be applicable because of such partial deliveries and acceptances. Therefore, as I agree with what is stated in the prevailing opinion in regard to the breach of the contracts, recovery should in my judgment be allowed the plaintiff for the breach of the four contracts to which the Statute of Frauds has no reference.

In respect to the three contracts as to which the Statutes of Frauds of both Pennsylvania and New York are pleaded, I concur substantially with the view of the trial court. While the evidence shows that the sugar trade in general uses differentials in making contracts in such cases as are involved in this action, it fails to show, as I read the record, that the same differentials are used generally in the trade. For all that appears each refinery may have its own schedule of differentials. Such a schedule would be no more than a price list of that particular refinery. The price list or refiner's schedule is consequently an inherent part of a contract made with reference thereto, and to satisfy the Statute of Frauds such part of the contract must be in writing and signed. (*Franklin Sugar Refining Co.* v. *Howell,* 274 Penn. St. 190; *Franklin Sugar Refining Co.* v. *Kane M. & G. Co.,* 278 id. 105; *Franklin Sugar Refining Co.* v. *John,* 279 id. 104; *Wilson* v. *Lewiston Mill Co.,* 150 N. Y. 314; *Ward* v. *Hasbrouck,* 169 id. 407; *Brauer* v. *Oceanic Steam Nav. Co.,* 178 id. 339.) If the amount of the differentials were established by trade custom, the Statute of Frauds would be satisfied. (*Franklin Sugar Refining Co.* v. *John,* 279 Penn. St. 104.) As already stated, however, the proof of trade custom does not in my opinion go far enough to do this. I, therefore, find that each of the three contracts in relation to which the Statutes of Frauds are interposed as a defense fails to embody in writing the whole agreement and is unenforcible, both under the Pennsylvania and under the New York statutes.

Judgment reversed on the law and facts, with costs, and judgment directed in favor of the plaintiff against both defendants for the sum of $41,113.45, with interest from December 15, 1921, with costs.