HOTEL WOODWARD CO. v. FORD MOTOR CO.

(Circuit Court of Appeals, Second Circuit.   May 14, 1919.)

No. 210.

1. DISMISSAL AND NONSUIT ⬡⟳44—NATURE—"NONSUIT."
   A dismissal not upon the merits is a "nonsuit."
   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Nonsuit.]

2. TRIAL ⬡⟳169—DIRECTING VERDICT—DUTY OF COURT.
   In an action in the federal District Court for New York, where the trial judge reaches a correct conclusion in favor of defendant after hearing all the evidence, the jury should be directed to enter a verdict in defendant's favor, and it is improper to merely enter an order dismissing the complaint.

3. APPEAL AND ERROR ⬡⟳927(3)—REVIEW—NONSUIT.
   On appeal from an order dismissing the complaint, after hearing all the evidence, it must be assumed, the order being one of nonsuit, that plaintiff's testimony is true, and he is entitled to every inference therefrom.

4. PLEADING ⬡⟳258(3)—AMENDMENT OF ANSWER—DURING TRIAL—SURPRISE.
   In an action brought in New York against a Michigan corporation for breach of a contract to lease premises in New York, where the defendant corporation pleaded the New York statute of frauds as required, defendant's motion to amend at trial by pleading the Michigan statute of frauds, which would bring into the case the question whether its agent, who signed the memorandum relied on, was authorized in writing, should be denied because of surprise, although defendant was entitled to amend after motion on due notice.

5. DEEDS ⬡⟳1—WHAT LAW GOVERNS.
   The law of the state in which land is situated must alone be looked to for the rules governing its alienation and transfer, and for the effect and construction of conveyances of all kinds.

6. COURTS ⬡⟳366(5)—DECISIONS—FEDERAL COURTS.
   In construction of local statutes, the federal courts must follow authoritative state decisions if found of sufficient clearness in the judgments of the courts of last resort.

7. FRAUDS, STATUTE OF ⬡⟳120—WHAT LAW GOVERNS.
   In an action against a Michigan corporation for breach of contract to lease for a term of years property located in New York, the New York statute of frauds (Real Property Law, § 259), which does not require an agent who signs a written memorandum to be authorized in writing, applies, instead of the Michigan statute of frauds, which requires the agent to be authorized in writing; this being so notwithstanding both the New York and Michigan statute of frauds declare a contract not evidenced by a written memorandum to be void, instead of providing, as did the original statute, that no action should be maintained thereon, in which case it was held that the law of the forum applied.

8. LANDLORD AND TENANT ⬡⟳22(4)—LEASES—AGREEMENTS.
   In an action against a Michigan corporation for breach of an agreement to lease New York property for a term of years, the question whether the minds of the parties had met held for the jury.

9. FRAUDS, STATUTE OF ⬡⟳159—CONTRACTS—MEMORANDUM IN WRITING.
   In an action against a Michigan corporation for breach of a contract to lease New York property for a term of years, the question whether the attorney and agent of the Michigan corporation who executed the written memorandum relied upon by plaintiff was authorized to do so, held, under the evidence, for the jury.

⬡⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

10. CORPORATIONS ⊂⇒398(1)—OFFICERS—AUTHORITY.

The president or other general officer of a corporation has prima facie power to do any act which the directors could authorize or ratify.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Hotel Woodward Company against the Ford Motor Company. There was a judgment dismissing the complaint, and plaintiff brings error. Reversed and new trial directed.

Writ of error to judgment entered in the District Court for the Southern District of New York.

Very little of an unnecessarily voluminous record was necessary to present the legal questions involved. Plaintiff here and below is a corporation of New York; it keeps a hotel, and will be hereinafter called "hotel company."

Defendant here and below is a corporation of Michigan, hereinafter called "motor company," and primarily engaged in the manufacture and sale of motor cars, but its corporate powers and the laws of New York enable it to purchase and improve (in the manner giving rise to this litigation) real property in this state.

By the early part of 1916 motor company had decided to buy land in New York City and erect thereupon a salesroom and warehouse. Several officials of motor company knew the president of hotel company, and negotiations ensued looking toward the erection above the New York warehouse and salesroom of motor company of many additional stories to be rented for a long term of years to hotel company, whose already existing hostelry was contiguous. Most of these negotiations took place in Michigan. Building plans were made, expenses considered, and the talk of at least three high officials of motor company with hotel company's president was offered in evidence.

Mr. Robertson, a member of the bar, was exclusively in the employment of motor company, having his office with and in those of the corporation. In August, 1916, under instructions from at least one of the vice presidents of motor company, he received from the president of hotel company a form of lease, and in Michigan and by said vice president was instructed to "fix it up." Having examined this draft, Mr. Robertson (as was testified on behalf of plaintiff) "said he would go ahead and prepare this lease and later on we would execute it." Thereupon, at the request of hotel company's president (Green), and in Michigan, Mr. Robertson wrote, and delivered to Mr. Green, the following letter:

"Ford Motor Company.

"Detroit, U. S. A., August 31, 1916.

"Hotel Woodward Company, 55th Street & Broadway, New York City— Gentlemen: Attention of Mr. Green: Confirming our conversation, will say that draft of lease as discussed is entirely acceptable to us and same will be prepared immediately for execution. We have consented to the alterations suggested by your attorney, as they do not seem in any manner to have changed the intent of the lease.

"We leave the question of limitation of assignment of equity as security until lease is signed, but think this can be arranged to your entire satisfaction.

"As soon as the lease is ready we will come on to New York and close up the entire matter of the execution of the lease and the security as agreed. In the meantime you may go ahead with any plans you have in connection with this proposition, so that there will be no delay when the architects' plans are ready.

"Trusting this will be entirely satisfactory, we are.

"Yours very truly,                                    Ford Motor Company,
                                    "L. B. Robertson, General Attorney."

Shortly thereafter, Mr. Robertson did prepare and send to hotel company in New York a form of lease. The form thus prepared was a revision of the draft received by him as above stated. The lease was to run for 21 years;

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the rental was to depend upon the cost of construction, which at the time was evidently estimated at approximately $700,000; but the document provided that any excess expense should cause a rise in rental amounting to five per cent. per annum on such excess.

This form of lease prepared by Mr. Robertson was submitted to motor company's counsel in New York, and some changes suggested. New York counsel for hotel company likewise made some suggestions, as to all of which there was evidence of acceptance by hotel company. On November 2d, 1916, motor company's board of directors met in Michigan and at that meeting the following resolution was offered:

"Whereas, this company owns a parcel of land on Broadway and Fifty-Fourth street, New York, suitable for New York offices and salesrooms.

"And whereas, the land is very valuable, and to construct simply an office and salesroom, would result in an exorbitantly high cost for offices and salesroom.

"And whereas, the management of this company, on account thereof, has entered into preliminary negotiations with the Hotel Woodward to occupy part of a suitable building on such site:

"Therefore, resolved, that this company proceed with the erection of the proposed building suitable to that site, for the use of this company as offices and salesroom, and that the negotiations of the management looking to the lease of the balance thereof to the Hotel Woodward Company for a period of twenty-one years be and they are hereby ratified and confirmed, and the management is authorized to erect the building at an approximate cost of $740,000, and enter into said lease.

"After some discussion further consideration of this resolution was deferred until the next meeting."

At the next meeting of the board the matter was thus treated:

"It was moved by Mr. Rackham and supported by Mr. Klingensmith, that the resolution pertaining to the building on the property owned by the Ford Motor Company at the corner of Fifty-Fourth street and Broadway, New York, as outlined in the resolution of the meeting of November 2, 1916, and at which time the resolution was deferred, be ratified, and that officers be given authority to proceed."

Hotel company gave evidence tending to show that, after receipt of Mr. Robertson's letter of August 31st, both parties had assumed that the matter was closed, except for details to be adjusted by attorneys for each party and the formal execution of a written lease.

On the part of motor company, evidence was given tending to show that, so far as the talk between the officers of the two corporations went, it had at all times been made plain by motor company that the making of any lease, and not only the renting, but even the construction of what was to be rented, depended upon the making of satisfactory and reasonably economical contracts for physical construction of anything more than motor company needed for its own business in New York City.

In the early part of 1917 it was discovered (according to evidence given for motor company) that the cost of construction would be not approximately $700,000, but about a half million more than that. When this possible enormous excess was communicated to hotel company, it declared its willingness to pay by way of additional rental, 5 per cent. per annum, even on such enormous excess; but motor company was either not willing, or not able, to spend the additional money, and refused altogether to proceed with the matter.

This action at law was then brought by hotel company against motor company to recover damages for breach, not of a lease (for no document called a "lease" was ever delivered or even executed), but to obtain compensation for the breach of a contract to make a lease.

The defenses pleaded were, in substance, that there never was any such meeting of minds as could be called a contract; but that, if there were, the same was voided under the statute of frauds.

The language of the answer in setting up the statute plainly referred to the New York Act, i. e. section 259 of the Real Property Law (Consol. Laws, c. 50) which is as follows:

"*When contract to lease or sell void.*—A contract for the leasing for a longer period than one year, or for the sale, of any real property, or an interest

therein, is void, unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the lessor or grantor, or by his lawfully authorized agent."

The case having come on for trial, and plaintiff having rested, the motor company moved to amend by pleading the Michigan statute of frauds, reading as follows:

"Sec. 8. Every contract for the leasing for a longer period than one year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof, be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized by writing." Comp. Laws, § 11977.

To this amendment hotel company objected on the ground of surprise, but over due exception the amendment was granted.

At the close of the whole case the trial judge dismissed the complaint, holding in substance that, if the minds of the parties had met in an agreement to make a lease in the form shown in evidence, such agreement or contract was voided by the statute of frauds, but gave no intimation as to whether he deemed the New York or Michigan statute applicable to the matter in hand.

Judgment having been entered upon this direction, this writ was taken, and, though plaintiff in error insists upon all duly taken exceptions, two principal questions have been argued:

(1) To the transaction shown, is the statutory law of Michigan or of New York to be applied?

(2) If the applicable statute does not bar the suit, was plaintiff below entitled to go to the jury?

Holm, Whitlock & Scarff, of New York City (Charles H. Tuttle, of New York City, Stephen C. Baldwin, of Brooklyn, N. Y., and Victor E. Whitlock, of New York City, of counsel), for plaintiff in error.

Crisp, Randall & Crisp, of New York City (Alfred Lucking, of Detroit, Mich., and W. Benton Crisp, of New York City, of counsel), for defendant in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1, 2] One matter of procedure justifies preliminary attention. The trial judge dismissed the complaint after having heard all the evidence adduced by both parties. It is clear from the record that the court ordered a dismissal instead of directing a verdict for the defendant because plaintiff's trial counsel insisted that nothing more than a dismissal was proper under the New York Code of Civil Procedure.

This was a mistake in form; a dismissal (not upon the merits) is a nonsuit, but where, after hearing all the evidence, the trial judge reaches a correct conclusion in favor of the defendant, the jury should be directed to enter a verdict in that defendant's favor. Stumpf v. Hallahan, 101 App. Div. 383, 91 N. Y. Supp. 1062; affirmed 185 N. Y. 550, 77 N. E. 1196. The rule in the federal courts we stated in Re Iron Clad Manufacturing Co., 197 Fed. 281, 116 C. C. A. 642.

[3] The case being before us, however, on a nonsuit, we "must assume * * * that plaintiff's testimony is true, and that they are thus entitled to the benefit of every fair inference therefrom." Davis v. Carnegie Steel Co., 244 Fed. at page 933, 157 C. C. A. at page 283.

[4] Another trial matter must be noted: The amendment pleading the Michigan statute of frauds should have been denied. It has been often held that the statute may be availed of under a general denial

(e. g. Third National Bank v. Steel, 129 Mich. 434, 88 N. W. 1050, 64 L. R. A. 119); but this defendant had specifically pleaded the New York statute, as required by Crane v. Powell, 139 N. Y. 379, 34 N. E. 911, and Matthews v. Matthews, 154 N. Y. 288, 48 N. E. 531. Doubt-. less it is "common form" to object to amendments as surprising; but, when the distinction between these two statutes, and the course of this trial is considered, the truth of this plea of surprise is manifest, and its result is to produce a legal question that might have been wholly avoided.

One effect of the amendment made after plaintiff rested was to raise the question whether Robertson's authority (if he had any) was oral or written, if the Michigan statute applied. We search the record in vain for any evidence that testimony on this point had been sought for; certainly none is presented to us, and it was going too far to insert this issue in a case actually on trial in New York, when such written authority as might exist certainly sprang into existence and remained of record in Michigan.

As, however, defendant (so far as we can see) was entitled to amend after motion on due notice, and the question intended to be raised is of importance upon any future trial herein, we shall consider it now.

[5-7] It is not doubted that we must look only to the law of the state in which land is situated for the rules governing its alienation and transfer and for the effect and construction of conveyances of all kinds. Olmsted v. Olmsted, 216 U. S., at page 393, 30 Sup. Ct. 292, 54 L. Ed. 530, 25 L. R. A. (N. S.) 1292, and cases cited. If, therefore, this action related to land title, there would be no doubt that the contract transferring the same would be governed and interpreted by the law of New York alone; for the proposed 21-year lease is an estate in lands, and real property under the law of this state. But the plaintiff herein is not suing to establish a title, nor is it seeking to procure one by way of specific performance or otherwise. The action is personal and transitory and asserts liability in the defendant for breach of a personal obligation only; there is no effort to obtain an interest in the res; indeed, inability to obtain such interest is presupposed, and relief in personam only is demanded.

Reduced to its simplest legal form, the question here is whether the lex loci contractus (or, more accurately, the lex loci conditionis), or the lex rei sitæ applies when a statute of frauds is invoked as a defense. The diversity of judicial opinion revealed by endeavors to discover what law governs the validity of a contract is a most extensive subject, and the results of exhaustive research were stated by Prof. J. H. Beale in 1909.[1] The manifest inclination of the courts has usually been toward treating statutes of frauds like other statutes regulating or limiting the right of contract and to find "the law of the contract" (as it is called in St. Louis R. R. v. Terre Haute R. R., 145 U. S. at page 405, 12 Sup. Ct. 953, 36 L. Ed. 748) in the law of the place where the contract was made. But mingled with this current of decision (turbid as it is) is plainly discernible the conflicting inclination to identi-

[1] Harvard Law Review, vol. 23, pp. 1, 79, 194, and 260.

fy all contracts relating to land and all actions for breach of such contracts with conveyances of title to interests in land, to which, as above stated, the lex rei sitæ always applies.

Thus the inquiry at bar is narrowed to the following question: What is the law of a contract made in Michigan for the conveyance of an interest in New York realty when the action is to recover money damages only in a personal and transitory suit for the breach of such contract, and action is brought in a court of the United States sitting in New York?

This comparatively small fraction of the larger subject may be, and has been, treated in several different ways.

One view has been compendiously and authoritatively stated by Mr. Dicey substantially as follows: All rights over or in relation to an immovable are governed by the law of the country where the immovable is situate: the effect of a contract with regard to an immovable is governed by the proper law of the contract—and "proper law of the contract" means the law by which the parties may be fairly presumed to have intended the contract to be governed. Dicey's Conflict of Laws (Ed. 1908) pp. 500, 510, and 529. This may be regarded as the prevailing, or at least most often stated, English view, and of it Prof. Beale notes that it almost invariably results in finding that the law of the contract is the law of England. This method of statement has often been chosen by our federal courts (Pinney v. Nelson, 183 U. S. at page 148, 22 Sup. Ct. 52, 46 L. Ed. 125, citing Wayman v. Southard, 10 Wheat. 48, 6 L. Ed. 253); and it has likewise at times obtained favor in the courts of New York (Stumpf v. Hallahan, supra). Whether this view is wholly consistent with Bank of Africa v. Cohen (1909) 2 Ch. 129, may be doubted, for it was there held that a married woman's capacity to contract concerning her own land in the Transvaal was governed solely by the law of the Transvaal, although she had assumed to contract in England, and an action to compel specific performance was promoted in Great Britain.

Another and often prevailing view is that a statute of frauds is a law concerning evidence, not affecting the inherent validity of contracts nor the capacity of the contractors to enter into obligation, but merely prescribing stringent rules by which alone the intent and purpose of the parties shall be made manifest; wherefore the lex fori applies. This doctrine, commonly thought to rest on Leroux v. Brown, 12 C. B. 801, has been apparently approved in Pritchard v. Norton, 106 U. S. 134, 1 Sup. Ct. 102, 27 L. Ed. 104.

But the distinction has been drawn in respect of the differing language of the statutes of different sovereignties. Many acts, like the original of 29 Car. II, c. 3, declare in substance that no action shall be brought except it be supported by a written contract or a note or memorandum thereof. Others (like the present statutes of New York and Michigan) declare that contracts not so supported shall be void. Statutes in the earlier form have been regarded as rules of evidence in Heaton v. Eldridge, 56 Ohio St. 87, 46 N. E. 638, 36 L. R. A. 817, 60 Am. St. Rep. 737; Downer v. Chesebrough, 36 Conn. 39, 4 Am. Rep. 29; and Third National Bank v. Steel, supra. The matter is well dis-

cussed in Obear v. First National Bank, 97 Ga. 587, 25 S. E. 335, 33 L. R. A. 384, and it is pointed out that where the statute merely forbids suit it is matter of evidence or remedy, and the lex fori applies. But Wolf v. Burke, 18 Colo. 264, 32 Pac. 427, 19 L. R. A. 792, rests upon the proposition that the statute of that state, like that of New York, renders the oral contract void, wherefore the doctrine of the Leroux Case is inapplicable; and this view of the New York statute has received the approbation of the late Prof. Dwight, sitting as referee in Marie v. Garrison, 13 Abb. N. C. (N. Y.) 258. The whole doctrine of Leroux v. Brown is disapproved in Wharton's Conflict of Laws (3d Ed.) § 689, et seq. Nevertheless support can be found for the view that even the New York statute is a rule of evidence. Crane v. Powell, supra; Matthews v. Matthews, supra.

When the inquiry is narrowed to discovering judicial pronouncements in respect of personal actions brought for breach of contract regarding land, made in a state other than that of the land itself, the results are equally varied. The view that in such an action the lex rei sitæ has no application is thought to have obtained vogue largely (though not wholly) from the decision of Holmes, J., in Polson v. Stewart, 167 Mass. 211, 45 N. E. 737, 36 L. R. A. 771, 57 Am. St. Rep. 452. This judgment is approved by Wharton, supra (section 276d), and in Minor's Conflict of Laws (1901) p. 416 et seq. In Finnes v. Selover, 102 Minn. 334, 113 N. W. 883, it was decided that where a contract was made in one state for the purchase of lands in another, and the money was to be paid in the state where the contract was made, lex rei sitæ governed as to title, and lex loci contractus as to the rights of the parties. This doctrine was followed in a litigation which as Selover v. Walsh reached the Supreme Court in 226 U. S. 112, 33 Sup. Ct. 69, 57 L. Ed. 146 (decided below 109 Minn. 136, 123 N. W. 291). While the highest court took pains to state that they were not concerned with the applicability of any given statute of frauds to the contract in hand, but only with an alleged violation of the federal Constitution, by such application, occasion was taken apparently to approve the doctrine of Polson v. Stewart, supra. See, also, the converse of the situation in Kryger v. Wilson, 242 U. S. 171, 37 Sup. Ct. 34, 61 L. Ed. 229. In the latter cause the courts of North Dakota had applied the lex rei sitæ, and the Supreme Court held that such application was "purely a question of local common law" and not a matter with which the Supreme Court of the United States was concerned.

While the writer of this opinion yields individual assent to the reasoning of Polson v. Stewart, it is the duty of this court to ascertain, if possible, what the law of New York is on this subject, and whether this court of the United States is bound to follow the same. In cases not legally distinguished from the present, it has been asserted (though without discussion of principle) that the statute of New York is not applicable to a personal and transitory suit there brought to recover damages for breach of a contract affecting foreign land; but that in such action, brought and tried in New York, lex rei sitæ is applicable. Abell v. Douglass, 4 Denio (N. Y.) 309; Burrell v. Root, 40 N. Y. 496. This view has been similarly asserted or assumed in Siegel v. Robin-

son, 56 Pa. 19, 93 Am. Dec. 775; Bissell v. Terry, 69 Ill. 184; Baird, etc., Co. v. Harris, 209 Fed. 291, 126 C. C. A. 217; and more fully in Meylink v. Rhea, 123 Iowa, 310, 98 N. W. 779. This is probably the rule generally prevailing down to date.[2]  Yet so fluid is the discussion that Cardozo, J., in Reilly v. Steinhart, 217 N. Y. 553, 112 N. E. 469, can refer to the whole matter here discussed as one "often debated and with varying conclusions."

But so far as the pronouncements of the highest court of this state are concerned, while authority can be found for the dogmatic rule of Burrell v. Root, for the doctrine of Leroux v. Brown, and for that of Prof. Dicey, no judicial support can yet be discovered for the only view that makes the Michigan statute applicable in this litigation, i. e. that lex loci conditionis must be applied.

In the construction of local statutes the national courts must follow authoritative state decisions, if found of sufficient clearness in the judgments of the courts of last resort. Re Seward Dredging Co., 242 Fed. 229, 155 C. C. A. 65. The "laws of the several states" to which the courts of the United States yield obedience comprise, not only state statutes, but the decisions of the highest courts. Nashua Bank v. Anglo-American Co., 189 U. S. 228, 23 Sup. Ct. 517, 47 L. Ed. 782; cf. Chicago, etc., Co. v. Kendall, 167 Fed. 66 et seq., 93 C. C. A. 422, 16 Ann. Cas. 560. That a federal court sitting in a given state will follow the statute of frauds of that state, see Buhl v. Stephens (C. C.) 84 Fed. 922. It may be said that, while the federal courts are bound to follow the authoritative state interpretation of a local act, the rule does not apply to the application of the statute. We think the distinction is not one of substance, and Farley v. Carey, etc., Co., 249 Fed. 476, 161 C. C. A. 434, was substantially a case of following the New York Court of Appeals in respect of the application of a very important statute as to which great differences of opinion had existed. We conclude that by the law of New York, which this court is bound to follow, the New York and not the Michigan statute, the lex rei sitæ or lex fori, and not the lex loci conditionis, is the law by which the validity and enforceability of this contract is to be adjudicated so far as it is affected by a statute of frauds.

[8, 9] Assuming now the exclusive applicability of the New York statute, it was error to take the case from the jury. The plaintiff's evidence tended to show that the minds of hotel company, acting through its president, and of motor company, operating through its president, vice president, and secretary, had met and united in an agreement that motor company would build and lease what it built to hotel company, in a form agreed upon in every essential and reduced to writing in and by the intended lease prepared for execution by Mr. Robertson.

We express no opinion on this point of fact, further than to say that it was for the jury to pass on. There were some details to be arranged. How unimportant they were (on this record) is shown by the fact that no differences about them have ever been assigned as reasons

---

[2] It is summarily stated in 39 Cyc. p. 1295, and approved in Story, Conflict of Laws (8th Ed.) §§ 363, 364.

for refusing to proceed with the matter. This branch of the case should have been given to the jury with instructions in accordance with the rules well stated and summarized in Scholtz v. Northwestern, etc., Co., 100 Fed. 573, 40 C. C. A. 556. See, also, Morse v. Tillotson, 253 Fed. 340, —— C. C. A. ——, 1 A. L. R. 1485. Cf. Sanders v. Pottlitzer, etc., Co., 144 N. Y. 209, 39 N. E. 75, 29 L. R. A. 431, 43 Am. St. Rep. 757.

Throughout the trial and in this court, plaintiff has rested upon Mr. Robertson's letter of August 31st, as being the note or memorandum satisfying the statute of frauds.

That this document, if subscribed by motor company's "lawfully authorized agent," was sufficient under the statute, has not been denied; but there was at least a question for the jury as to Mr. Robertson's authority.

Doubtless this gentleman had no power whatever to make the contract here alleged, but that is immaterial. The point is: Did he have authority to make the note or memorandum of August 31st? And the solution of this matter depends upon the authority of the officer or officers of motor company who told him in respect of this particular lease to "fix it up"; or (to paraphrase Mr. Robertson's own testimony) "to prepare as a lawyer or put in legal shape the understanding that existed between" motor company and hotel company. If there was an understanding or mind-meeting and the lessor's attorney was told to put that understanding in legal shape, or words to that effect, we have no doubt that such authority included the power and duty of telling the truth about it, which (if plaintiff's version of the contractual arrangements is the truth) is just what Mr. Robertson did.

Thus we reach the question of the authority of motor company's officers.

[10] Here we need go no further than to indicate adherence to the rule that the president or other general officer of a corporation has power prima facie to do any act which the directors could authorize or ratify. Hastings v. Brooklyn, etc., Co., 138 N. Y. 479, 34 N. E. 289.

It would be idle to recite evidence which, if regiven at another trial, may be quite different in effect by reason of other testimony not now before us. It suffices, therefore, to say that on this record there was enough to take to the jury the question whether Mr. Robertson was authorized to do what he did by officers of motor company themselves acting with authority.

We may mention that no question of damages is presented by this writ; by agreement of counsel such matters were eliminated from the proceedings below.

For these reasons, it is ordered that the judgment be reversed, with costs, and a new trial directed.