### In re BARNETT.

### Appeal of UNITED CIGAR STORES CO. OF AMERICA.

(Circuit Court of Appeals, Second Circuit. March 8, 1926.)

No. 14.

**1. Bankruptcy ☞440.**

Remedies by appeal and petition to revise are mutually exclusive, and not cumulative, and practice of bringing case into Circuit Court of Appeals by both is disapproved.

**2. Bankruptcy ☞440—Order directing bankrupt's landlord to deliver deposit to bankruptcy trustee is "proceeding in bankruptcy," reviewable by petition to revise, and is not "controversy" arising in bankruptcy proceeding, reviewable by appeal (Bankruptcy Act, §§ 24b, 25a [3], being Comp. St. §§ 9608, 9609).**

Order directing bankrupt's landlord to deliver deposit to bankruptcy trustee, and making landlord's claim for unpaid rents a general claim, involves questions arising in "proceeding in bankruptcy," reviewable by petition to revise, under Bankruptcy Act, § 24b (Comp. St. § 9608), and not by appeal, under section 25a(3), being Comp. St. § 9609, as debt or claim of $500 or over, nor as "controversy" arising in bankruptcy proceedings.

**3. Deeds ☞1—Descent and distribution ☞4.**

It is general law of federal and state courts that law of state in which land is located controls its alienation, transfer, and descent.

**4. Landlord and tenant ☞20—"Lease" is conveyance of lands or tenements creating an estate, and is not mere contract.**

Lease is conveyance of lands or tenements, usually in consideration of compensation, made for life, for years, or at will, but for less time

than lessor has in premises, and creates an estate, and is not a mere contract.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Lease.]

**5. Landlord and tenant ☞2.**

In so far as lease creates rights in rem in land, it is governed by law of place where land is situated.

**6. Landlord and tenant . ☞2—Covenants of lease of realty creating rights in personam are governed by lex loci contractus.**

In so far as lease creates rights in personam through covenants, it is governed by law of place where contract is made.

**7. Landlord and tenant ☞37.**

Covenants in lease are mutually independent, unless in terms expressly conditional.

**8. Landlord and tenant ☞182—Lease provision that rent for whole term shall become due after three days' notice on lessee's failure to perform any condition or covenant, is illegal in New York.**

Provision of lease making rent for whole term due after three days' notice from lessor, if lessee fails to perform any covenants or conditions of lease, is illegal in New York, as providing for penalty, and not liquidated damages.

**9. Bankruptcy ☞140(½)—Landlord and tenant ☞198—In Pennsylvania, lessor's taking possession of demised premises terminates lessee's liability for future rent, and lessor could not retain bankrupt lessor's deposit.**

In Pennsylvania, lessor's taking possession of demised premises terminated lessee's liability for future rent, notwithstanding lease provision that on tenant's bankruptcy rent for remainder of term shall be due and payable, and lessor could not retain tenant's deposit, but must turn it over to bankruptcy trustee.

**10. Bankruptcy ☞318(4), 345—In Pennsylvania, if lessor accepts surrender of lease on tenant's bankruptcy, all unmatured obligations are terminated; but, if he does not, and invokes clause making all future rent due, his claim is that of general creditor only without priority.**

In Pennsylvania, if lessor accepts surrender of lease on lessee's bankruptcy, all unmatured obligations depending on continuance of lease are terminated; but, if he does not accept surrender, and takes advantage of clause providing that on bankruptcy all future unpaid rent becomes due, his claim is that of general creditor only, without priority of payment out of deposit.

**11. Bankruptcy ☞191(1)—Under lease authorizing lessee to enforce any law where demised property is located, lessor was entitled to retain statutory lien on fixtures out of tenant's deposit.**

Where lease authorized lessor to enforce any law of state in which demised property was situated governing relation of landlord and tenant. *held* that, on cancellation of lease on lessee's bankruptcy, lessor was entitled to retain from tenant's deposit amount realized from sale of fixtures and equipment on demised

premises against which lessor had lien under law of Pennsylvania, where premises were located, notwithstanding personal covenants of lease were governed by law of New York.

**12. Bankruptcy ⊜═293(4)—Claimant, submitting claim to bankruptcy court, thereby consents to court's jurisdiction to decide any lawful defenses (Bankruptcy Act [Comp. St. §§ 9585–9656]).**

Claimant, submitting claim to bankruptcy court, thereby consents to jurisdiction of court to decide any lawful defenses, and his rights must be determined according to Bankruptcy Act. (Comp. St. §§ 9585–9656).

**13. Bankruptcy ⊜═22.**

Bankruptcy proceedings must be administered in accordance with Bankruptcy Act (Comp. St. §§ 9585–9656) and general orders, and not under any broad. unlimited equity power.

Petition to Revise Order of and Appeal from the District Court of the United States for the Southern District of New York.

In the matter of Bertrand Barnett, trading as Culver & Co., bankrupt. On petition of the United Cigar Stores Company of America to revise and appeal from an order of the District Court (12 F.[2d] 70) affirming an order of referee in bankruptcy, directing petitioner to return bankrupt's deposit under its lease from petitioner to bankruptcy trustee. Order affirmed on petition to revise, and appeal dismissed.

Stroock & Stroock, of New York City (Charles Levy and I. B. Levine, both of New York City, of counsel), for appellant.

Kremer & Leavitt, of New York City (Samuel Leavitt, of New York City, of counsel), for respondent.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge. The United Cigar Company of America, a corporation organized under the laws of the state of New Jersey, entered as lessor into two leases. The premises involved in each were situated in the city of Pittsburgh in the state of Pennsylvania. The leases were signed and delivered in the city of New York, where the lessor maintained an office, and where the rentals were to be paid as they became due.

The first lease was for a term commencing on September 1, 1921, and ending on August 31, 1926, at 8 a. m., at the annual rent of $7,500. And the second lease was for a term commencing on June 1, 1922, and ending on August 31, 1926, at 8 a. m., at the annual rent of $900. The lessee covenanted in each lease to pay the rent in equal monthly

payments, punctually in advance on the 1st day of each and every month.

The first lease was made to Harry W. Culver and Patrick H. Ryan, doing business under the firm name of Culver & Co., in the city of New York. This lease was assigned on June 23, 1922, to Bertrand Barnett, who was engaged in business in New York and Philadelphia, and who is the bankrupt herein, having been adjudged a bankrupt in the Southern District of New York on October 9, 1922. At the time of the assignment of this lease to Barnett he assumed all the terms and provisions therein and agreed to perform the same. The second lease was made directly to Bertrand Barnett, trading under the firm name of Culver & Co.

At the time the first lease was entered into the lessee, as security for the faithful performance of the covenants of the lease, deposited with the lessor $1,200 in Liberty bonds. At the time these bonds were so deposited, the lessee signed a writing in which the conditions under which the deposit was made were stated. The essential portions of the statement may be found in the margin.[1]

---

[1] "In the event that the lessee shall faithfully and fully pay the said rent and keep and perform each and every of the covenants, agreements, and provisions in this lease to be kept and performed by the lessee, up to and during the full term and period of this lease, then the lessor will, upon the expiration of the term, return to the lessee the aforementioned Liberty bonds. In the event, however, that the lessee shall be dispossessed from or shall vacate or abandon the premises, or shall fail, neglect, or omit at any time, either during the said term or after the term shall be terminated by dispossess or summary proceedings or entry or re-entry by the lessor, to perform and fulfill each and every of the covenants, agreements, and conditions in this lease set forth to be kept, performed, and fulfilled by the lessee, then the lessor may sell the said Liberty bonds, at public or private sale (at which the lessor may become purchaser), without notice, and use and apply the proceeds thereof, so far as the same will apply, for the payment of the rent reserved and any other sums by the lessee agreed to be paid, and to the performance of the covenants and agreements in this lease contained, to be kept, performed, or fulfilled by the lessee, including any loss and/or deficiency which the lessee has agreed to pay; and it is agreed that no action or proceedings of any kind shall be instituted, begun, or carried on by the lessee in relation to the bonds so deposited until three months after the expiration of the full term of this lease as originally made. It is hereby agreed between the parties hereto that any such default, omission, neglect, or failure on the part of the lessee shall act and be deemed as an absolute transfer of the lessor of the said Liberty bonds, and any accumulated interest thereon, and of all right, title and interest of the lessee therein."

This deposit of bonds was for the performance by the lessee of his covenants contained in the first lease, and is without application to the second lease afterwards executed. The agreement under which the bonds were deposited contains no reference to the second lease, and that lease contains no allusion to it. The first lease itself contained a provision relating to the bonds. After stating that they were to be held by the lessor for the punctual payment of the rent and the performance of each covenant contained in the lease, it provided as is set forth in the margin.[2]

An involuntary petition in bankruptcy was filed against Barnett on October 4, 1922, and a receiver in bankruptcy was appointed. Thereafter, and on October 16, 1922, the lessor sent to the bankrupt, and to the receiver of the bankrupt, a notice that the two leases, hereinbefore set forth, were canceled and terminated, and would expire under and pursuant to the notice on October 20, 1922, and that "on or before which date you will be required to vacate and surrender possession of the premises to the undersigned."

The notice was given under and pursuant to the rights afforded to the lessor under and by the terms of the leases and more particularly to the provision thereof reading as follows: "If at any time, proceeding in bankruptcy shall be instituted by or against the lessee * * * or if a receiver or trustee shall be appointed of the lessee's property or if this lease shall by operation of law, devolve upon or pass to any person or persons other than the said lessee personally, then and in each of said cases this lease shall cease and come to an end three days after notice shall be sent by mail by the lessor to the lessee addressed to the premises. Upon such termination all future installments of rent unpaid, and all other sums due and payable or to become due and payable by the lessee shall at once become due and payable."

Pursuant to the above notice the landlord took possession of the demised premises on October 20, 1922. This possession he took not for the purpose of reletting the premises for the benefit of the tenant thereby diminishing by the amount received by the reletting the amount due from the tenant for the remainder of the term, but possession was resumed for his own benefit as the leases were "canceled and terminated."

The receiver in bankruptcy having realized from the sale of the fixtures $625, the lessor moved before the referee for an order requiring the trustee to pay to it that amount. The trustee did not dispute the landlord's right to the amount realized from the sale of the fixtures, but claimed that this sum should be taken out of the Liberty bonds which the landlord held as security under the lease, and that the balance of such bonds should then be turned over to him. The referee sustained this claim of the trustee, and by an order dated November 7, 1924, he directed the United Cigar Stores Company of America to apply so much of the Liberty bonds which it held on deposit under the lease for the satisfaction of its claim for the $625 as a priority claim under the Pennsylvania law for accrued rent, and further directed that the balance of the bonds, together with such accumulations of interest as it had received on the said bonds, be paid over to the trustee. The order stated the par value of the bonds as $1,250, and the accumulations thereof as being $125.38. The aggregate amount of the bonds and interest, therefore, was fixed at $1,375.38, and, after deducting the amount of $625 realized from the sale of the fixtures, left the sum of $750.38 in the hands of the United Cigar Stores Company, which was to

[2] "In the event that the lessee shall faithfully and fully pay the said rent and keep and perform each and every of the covenants, agreements, and provisions in this lease to be kept and performed by the lessee, up to and during the full term and period of this lease, then the lessor will, upon the expiration of the term, return to the lessee the aforementioned Liberty bonds. In the event, however, that the lessee shall be dispossessed from or shall vacate or abandon the premises, or shall fail, neglect; or omit at any time, either during the said term or after the term shall be terminated by dispossess or summary proceedings, or entry or re-entry by the lessor, to perform and fulfill each and every of the covenants, agreements, and conditions in this lease set forth to be kept, performed, and fulfilled by the lessee, then the lessor may sell the said Liberty bonds, at public or private sale (at which the lessor may become purchaser), without notice, and use and apply the proceeds thereof, so far as the same will apply, toward the payment of the rent reserved and any other sums by the lessee agreed to be paid, and to the performance of the covenants and agreements in this lease contained to be kept, performed, or fulfilled by the lessee, including any loss and/or deficiency which the lessee has agreed to pay; and it is agreed that no action or proceeding of any kind shall be instituted, begun, or carried on by the lessee in relation to the bonds so deposited until three months after the expiration of the full term of this lease as originally made. It is hereby agreed between the parties hereto that any such default, omission, neglect, or failure on the part of the lessee shall act and be deemed as an absolute transfer to the lessor of the said Liberty bonds, and any accumulated interest thereon, and of all right, title, and interest of the lessee therein."

be paid over by it. It resulted from this that the balance of the rent due at the time the petition in bankruptcy was filed, and which amounted to $1,400, after deducting the $625, left the sum due for the unpaid rent, $775, as a general claim against the assets of the bankrupt.

The United Cigar Stores Company, feeling itself aggrieved by this order, sought to have it revised and reversed by the District Judge. But after a hearing of all parties an order was entered in the District Court dated January 24, 1925, which in all respects approved and affirmed the order of the referee. From this order, thus approved and confirmed, the case was brought to this court on appeal and petition to revise.

[1, 2] This court has many times said that the two remedies are not cumulative, and are mutually exclusive. We disapprove the practice of bringing a case into this court by both remedies. No one probably would think of bringing a case here by writ of error and also by an appeal, and excuse the course pursued by setting up ignorance of the proper procedure. It is perfectly plain that the questions involved herein arise in a "proceeding in bankruptcy," and not in a "controversy" arising in bankruptcy proceedings. The court is therefore entitled to revise on matter of law the proceedings in the District Court by virtue of section 24b (Comp. St. § 9608). This is not an attempt to review a judgment allowing or rejecting a debt or claim of $500 or over, and therefore cannot be brought here by way of appeal under section 25a (3), being Comp. St. § 9609. The appeal is dismissed, and the case will be disposed of on the petition to revise.

The questions to be considered grew out of leases made and delivered in New York state, where the rentals also were to be paid, and the premises demised were situated in the state of Pennsylvania; and if a conflict of law exists as to the rights of the parties under the leases, by the law of which state are the rights to be determined?

[3] It is an unquestionable principle of general law that the law of the state in which land is situated controls its alienation, transfer, and descent. In United States v. Crosby, 7 Cranch, 115, 3 L. Ed. 287, Mr. Justice Story, writing for the court in 1812, declared that the court "are clearly of opinion that the title to land can be acquired and lost only in the manner prescribed by the law of the place where such land is situate." Clark v. Graham, 6 Wheat. 577, 5 L. Ed. 334; Kerr v. Moon, 9 Wheat. 565, 570, 6 L. Ed. 161; Mc-

Cormick v. Sullivant, 10 Wheat. 192, 202, 6 L. Ed. 300; Taylor v. Benham, 5 How. 233, 273, 12 L. Ed. 130; McGoon v. Scales, 9 Wall. 23, 19 L. Ed. 545; Burbank v. Conrad, 96 U. S. 291, 298, 24 L. Ed. 731; Brine v. Insurance Co., 96 U. S. 627, 639, 24 L. Ed. 858; Schley v. Pullman Car Co., 7 S. Ct. 730, 120 U. S. 575, 580, 30 L. Ed. 789; Langdon v. Sherwood, 8 S. Ct. 429, 124 U. S. 74, 81, 31 L. Ed. 344; DeVaughn v. Hutchinson, 17 S. Ct. 461, 165 U. S. 566, 570, 41 L. Ed. 827; Clarke v. Clarke, 20 S. Ct. 873, 178 U. S. 186, 191, 44 L. Ed. 1028; Olmsted v. Olmsted, 30 S. Ct. 292, 216 U. S. 386, 393, 54 L. Ed. 530, 25 L. R. A. (N. S.) 1292; Munday v. Wisconsin Trust Co., 40 S. Ct. 365, 252 U. S. 499, 503, 64 L. Ed. 684. This is not only the law of the federal courts, but of the state courts as well, and it is our understanding that it is the law of all countries. This court had occasion to apply the rule in Hotel Woodward v. Ford, 258 F. 322, 169 C. C. A. 338.

In Wharton on Conflict of Laws (3d Ed.) vol. 2, c. 7, the writer states that, under the Roman law, the English common law, and that of the United States, real estate in all jurisdictions and by an uninterrupted current of authority is held subject to the lex rei sitæ.

[4, 5] A "lease," strictly speaking, as Blackstone defined it, "is a conveyance of any lands or tenements (usually in consideration of rent or other annual recompense) made for life, for years, or at will, but always for a less time than the lessor hath in the premises." 2 Blackstone's Com. 317. A lease creates an estate for years or for a less period, and the estate is as well recognized as an estate for life or in fee simple. A lease is something more than a mere contract. Although more than two centuries ago a lease was said in Bacon's Abr. tit. "Leases," to be a contract. And in Tiffany on Landlord & Tenant, vol. 1, p. 161, such a definition is criticized as inaccurate, and it is said that modern scientific writers on the law of contract do not use the term "lease" in this extended sense. It is clear that, in so far as a lease creates rights in rem in the land itself, it is governed by the lex loci rei sitæ.

[6] But the term "lease" is commonly used as including something more than the mere legal act by which a tenancy is created, and embraces what are described as the "covenants of the lease," which create rights in personam, as distinguished from rights in rem. In so far as it creates rights in personam, the question arises whether the "con-

tract" into which the parties have entered is to be governed by the lex loci rei sitæ, or by the lex loci contractus.

The lease in this case, as already stated, was made in the city of New York, where both parties to the lease maintained offices and were engaged in business. It must be admitted that the lease, in so far as it affects the creation of an interest in real estate, is governed by the law of the situs. But although a lease relates to an interest in real property, and in so far as it so relates is governed by the lex loci rei sitæ, the personal covenants between the contracting parties, though contained in a contract affecting realty are governed by the lex loci contractus; and as the contract of lease was made in New York, and the deposit was delivered to the lessor in New York, and rent was payable in New York, the law of New York governs as to the purely personal covenants.

In Selover, Bates & Co. v. Walsh, 33 S. Ct. 69, 226 U. S. 112, 57 L. Ed. 146, the court had before it a contract for the sale of land situated in Colorado; the contract having been made in Minneapolis, in the state of Minnesota. An action was brought in Minnesota to recover damages for the breach of the contract. The contract provided that payments were to be made in installments at the office of plaintiff in error in Minneapolis, and it was stipulated that "time and punctuality" were "material and essential ingredients" of the contract. The contract also provided that, in case of failure to make the payments punctually and upon the strict terms and times limited, and upon default in the strict performance of any other covenant of the contract, at the option of the party of the first part, the rights of the party of the second part should become utterly null and void, and should utterly cease and determine. The party of the second part defaulted by failing to pay the taxes, and the party of the first part elected to terminate the contract. The laws of Minnesota provided that a vendor in a contract for the sale of land should have no right to cancel, terminate, or declare a forfeiture of the contract, except upon 30 days' written notice to the vendee, and that the latter should have 30 days after service of such notice in which to perform the conditions or comply with the provisions upon which default occurred. The Supreme Court of Minnesota held that this statute applied to the contract, and, as it had not been complied with, gave judgment for the defendant; and the Supreme Court of the United States affirmed the judgment and held that the Min-

nesota statute applied to contracts made in Minnesota for the sale of land in another state. The court rejected the theory that the law of Colorado, the situs of the property, was the law of the contract respecting all questions arising under it. The court said that, while the principle cannot be contested that the law of the situs of the property governs its transfer, it did not apply in an action strictly personal, which in no way affected the land.

In Polson v. Stewart, 45 N. E. 737, 167 Mass. 211, 36 L. R. A. 771, 57 Am. St. Rep. 452, a husband and wife, domiciled in North Carolina, entered into a contract concerning land in Massachusetts. By the law of the latter state at that time a husband and wife had no capacity to contract with each other. But under the statutes of North Carolina the wife could contract as a feme sole with her husband as well as with others. The husband covenanted to surrender to her all his rights in land owned by her in Massachusetts. It was held that the law of North Carolina determined the validity of the contract. The Massachusetts court, in passing on the question, said:

"But it is said that the laws of the parties' domicile could not authorize a contract between them as to lands in Massachusetts. Obviously this is not true. It is true that the laws of other states cannot render valid conveyances of property within our borders, which our laws say are void, for the plain reason that we have exclusive power over the res. * * * But the same reason inverted establishes that the lex rei sitæ cannot control personal covenants, not purporting to be conveyances, between persons outside the jurisdiction, although concerning a thing within it. Whatever the covenant, the laws of North Carolina could subject the defendant's property to seizure on execution, and his person to imprisonment, for a failure to perform it. Therefore, on principle, the law of North Carolina determines the validity of the contract."

In Atwood v. Walker, 61 N. E. 58, 179 Mass. 514, a contract was entered into in New York by which it was agreed that defendant would convey to the plaintiff certain land in Massachusetts. The deed was to be delivered in New York, and the money was to be paid there. The defendant was unable to give a good title. By the law of New York the plaintiff could recover in such a case only nominal damages and expenses, while in Massachusetts he could recover his loss of profit. Suit was brought in Massachusetts,

and it was held that the measure of damages was to be determined by the law of New York, where the contract was made and to be performed. The court said:

"In the present case the New York contract was to convey a certain piece of land. Its meaning and effect, according to the law applicable to it, is that the defendant, acting in good faith, if it turns out that she is unable to make a good title, will not give to the plaintiff the profits of his bargain, but will save him from loss, and put him in as good a position as if the contract had not been made. This is the true interpretation of the contract, reading it in connection with the law that determines its effect. The contract cannot be made a different contract, or given a greater effect by bringing an action upon it in another jurisdiction. The rights of the parties are fixed by the writing and the law by which it is to be interpreted. When the breach occurred, the details of the damages were immediately fixed by the writing, the law and the conditions then existing. When the present action was brought, it was to recover the damages due under the contract. These damages grew out of a contract and transactions which had been concluded in New York, and which were the cause of action on which the plaintiff seeks to recover here."

[7] The question is whether the covenants of the lease herein involved as to the payment of the rent are dependent or independent contracts. It is quite true, as Mr. Williston points out in his work on Contracts (volume 2, § 890), that as an original question a lease might well have been regarded as a wholly bilateral agreement, and that the principles of dependency applicable to ordinary bilateral contracts should not likewise be applicable to leases. But the fact is that they are not so regarded in English and American law. The law as established in both countries is, as Mr. Williston states in the section above cited, that covenants in leases are held mutually independent unless in terms expressly conditional. Both the courts of Pennsylvania, in which the premises are situated, and the courts of New York, where the leases were made, have so held. Prescott v. Otterstatter, 85 Pa. 534; Lutz v. Goldfine, 129 N. Y. S. 63, 72 Misc. Rep. 25; Thomson-Houston Co. v. Durant Land Co., 39 N. E. 7, 144 N. Y. 34. And see Belfour v. Weston, 1 T. R. 310; Dawson v. Dyer, 5 B. & Ad. 584; Edge v. Boileau, 16 Q. B. D. 117, 120; Taylor v. Finnigan, 76 N. E. 203, 189 Mass. 568, 575, 2 L. R. A. (N. S.) 973; Stewart v. Childs Co., 92 A. 392, 86 N. J. Law, 648, L. R. A. 1915C,

649; Rubens v. Hill, 72 N. E. 1127, 213 Ill. 523; Lewis v. Chisholm, 68 Ga. 40; Arnold v. Krigbaum, 146 P. 423, 169 Cal. 143, Ann. Cas. 1916D, 370; Tedstrom v. Puddephatt, 137 S. W. 816, 99 Ark. 193, Ann. Cas. 1913A, 1092; Smithfield Imp. Co. v. Coley-Bardin, 72 S. E. 312, 156 N. C. 255, 36 L. R. A. (N. S.) 907; Arbenz v. Exley, Watkins & Co., 44 S. E. 149, 52 W. Va. 476, 61 L. R. A. 957. The question was not directly involved in Re Mullings Clothing Co., 238 F. 58, 151 C. C. A. 134, L. R. A. 1918A, 539, decided by this court in 1916, and in which the present writer wrote the opinion of the court. We do not regard it as having decided that a lease is an ordinary bilateral contract.

[8] The personal covenants of the lessee contained in the lease, being independent and not dependent covenants, are governed, then, by the law of New York, where the contract was made and where the rent was payable. We must therefore inquire as to the validity of the covenant now to be mentioned. It reads as follows:

"In case the lessee fails or omits to perform any of the covenants or conditions herein contained, the term of this lease shall expire three days after notice in writing of any such failure or omission shall be sent by lessor to the lessee by mail or otherwise, addressed to demised premises, and this lease shall cease and come to an end in the same manner and to the same effect as if that were the date originally fixed herein for the expiration of the term."

The question arises whether, under the law of New York, a provision in a lease is valid which makes the entire amount of the rent to be paid under the lease due and payable in case the lessee fails to perform *any* of the covenants or conditions contained in the lease—if the lessor sees fit to elect to terminate the lease. An examination of the lease discloses that the covenants and conditions are numerous. Among them we may mention: (1) Failure to pay any monthly installment of rent on the 1st day of the month. (2) Failure to pay when due all charges for water against the premises. (3) Leaving the premises unoccupied or vacant during the term. (4) Placing any "sign, advertisement, device, or notice on any part of the premises without the lessor's written consent."

The provision in the lease giving the landlord the right to recover the total amount of the rent for the term less the rent actually paid upon default in *any* covenant or condition contained in a lease is, under New York

law, illegal. It is regarded, not as liquidating the damages, but as a penalty. As such it is unconscionable and cannot be enforced.

A lease of similar character has been recently before the courts of New York and so adjudged in the trial court, in the Appellate Division, and in the New York Court of Appeals, and without a dissenting opinion in either court. The Court of Appeals thought the case so free from doubt that it affirmed without opinion, 884 West End Avenue Corporation v. Pearlman, 193 N. Y. S. 670, 201 App. Div. 12, and 138 N. E. 458, 234 N. Y. 589. The opinion of the Appellate Division was carefully prepared, and the cases seem to have been carefully examined. The theory upon which the decision seems to rest is that, where there are numerous covenants of the most varied kinds and importance, and yet the sum named is payable for the breach of any, even the least, it is a penalty and unenforceable. In the opinion in the Appellate Division the court said:

"It will be seen that this lease, most exhaustive in restrictions and burdens placed upon the tenant, leaves him at the mercy of the landlord, who for breach of the most trivial requirement has the right to declare a default, and to call for payment of the rent for the remainder of the term. Some of the conditions under which this may happen are so insignificant and trivial, involving either no damage whatever or a nominal amount, as to show that the provision for the payment of the whole rent reserved is in reality a penalty entirely disproportioned to any damage that could possibly ensue for the tenant's acts."

[9] But, if the law were otherwise than as we have laid it down, and the entire lease, including the independent covenants of the lessee, should be held to be subject to the law of the state of Pennsylvania, the ultimate result would not be different. The landlord canceled and terminated the lease by its own affirmative act, by the notice and resumption of possession thereunder. Its re-entry was for its own account, and not for the purpose of reletting for account of the tenant. Any profits made by virtue of the re-entry during the demised term inured to the benefit of the landlord, and not to the tenant. The landlord resumed possession and complete dominion and control of the demised premises, working a complete ouster and termination of the lease.

As the landlord resumed possession of the demised premises on October 20, 1922, he was not, under the law of Pennsylvania, entitled to rent for the balance of the term, notwithstanding the provision in the lease that upon its termination "all future installments of rent unpaid * * * shall at once become due and payable." It thus appears that the lessor is no more entitled under the law of Pennsylvania, and under the circumstances of this case, to claim rent for the unexpired term of the lease, than he would have been under the law of New York for reasons already stated.

It is to be observed that the deposit of Liberty bonds was under the lease dated July 19, 1921, and expiring on August 31, 1926. The security thus deposited has nothing to do with the second lease, dated June 2, 1922, and which was to expire on August 31, 1926. This, we think, was conceded at the argument before us; and we are not now concerned with any claim due under that lease, which would simply be a general claim against the bankrupt estate, and as such it is not herein involved.

We must therefore hold that, as the cancellation of the first lease and the re-entry by the landlord on October 20, 1922, terminated the lessee's obligation for future installments of rent, the lessor is not entitled to retain the Liberty bonds in his possession by way of security for the payment of future installments of rent. The Liberty bonds cannot be retained by the lessor, but must be turned over to the trustee pursuant to the order of the District Court, together with all accumulations of interest it may have received thereon down to the present time.

[10] It is settled law in the Third Circuit that if, under the law of Pennsylvania, the lessor, on the bankruptcy of the lessee, accepts the surrender of the lease, all unmatured obligations depending upon a continuance of the lease are terminated. If he does not accept the surrender of the lease, but takes advantage of the clause which provides that on the lessee's bankruptcy, or default in the conditions of the lease, all future installments of rent unpaid for the remainder of the term at once become due and payable, he can claim therefor as a general creditor only, without any priority of payment out of funds held for the tenant.

In the case of In re Schomacker Piano Forte Mfg. Co. (D. C.) 163 F. 413, the lease of premises in Philadelphia contained a provision that, if certain things were done by the lessee during the continuance of the lease, or if a petition in bankruptcy was filed against it, the whole rent for the balance of the term should become due and payable forthwith. A petition in bankruptcy was filed against

the lessee on February 21, 1907, and on March 14, 1907, the lessee was adjudged a bankrupt. The rent had been paid in full to March 1, 1907. The lessor filed a proof of claim, which included a claim of $7,800 for rent from March 1, 1907, to April 1, 1908. It appears that the state court in Pennsylvania had appointed in February, 1907, receivers of the assets of the lessee under a bill in equity which alleged it was insolvent and unable to pay its debts. The filing of such a bill, it was claimed, was one of the conditions specified in the lease which made the whole rent for the balance of the term "due and payable forthwith." It appeared that on March 15, 1907, the receiver had delivered the premises to the lessor as the owner thereof, and it was claimed that, in view of that fact, the claimant was entitled only to such rent as had accrued to March 15, 1907, amounting to $290.37. Under all the circumstances of the case, it was held that the landlord had accepted the surrender of the lease, and that, having done so, the lessor could not claim the rent for the remainder of the term.

In Wilson v. Pennsylvania Trust Co., 114 F. 742, 52 C. C. A. 374, a lease for five years provided that, if the tenant became a bankrupt, the rent for the entire term should be taken to be due and payable forthwith. He was adjudged a bankrupt within a year, while owing three months' rent. At the end of the year the lessor took exclusive possession of the premises. It was held by the Circuit Court of Appeals in the Third Circuit that, having taken exclusive possession at the end of the year, he could not claim rent for the balance of the term, notwithstanding the clause in the lease above mentioned.

In South Side Trust Co. v. Watson, 200 F. 50, 118 C. C. A. 278, the lease provided that, in case of the bankruptcy of the lessee, the lessor might demand and receive the rent for the balance of the term. The bankrupt had resumed possession of the premises and the Circuit Court of Appeals for the Third Circuit adhered to its ruling in Wilson v. Pennsylvania Trust Co. It said it saw no reason to doubt the soundness of its former ruling, and added: "A landlord cannot be allowed rent for the use of premises while he himself is in possession."

In Re H. M. Lasker, 251 F. 53, 163 C. C. A. 303, the lease contained a clause similar to the one herein involved. And the Circuit Court of Appeals, referring to its former decisions, reaffirmed them, saying: "We believe those decisions are based on sound and common-sense principles, and that we should adhere, as we do, to our former view that 'a landlord cannot be allowed rent for the use of premises while he himself is in possession.' "

And in Electric Appliance Co. v. Ellis, 4 F.(2d) 108, the Circuit Court of Appeals again adhered to its former rulings. It sustained a ruling of the referee and the lower court that "the landlord, who claims rent in advance to the end of the term, must permit the tenant's trustee in bankruptcy to have the use of the premises to the end of the term. The landlord cannot have both the rent and the possession, nor can he, in the absence of any agreement, split the term, and have rent for part of it, and possession for the rest. Wilson v. Pennsylvania Trust Co., 114 F. 742, 52 C. C. A. 374, 8 Am. Bankr. Rep. 169. A lease is an entire contract. McClurg v. Price & Simms, 59 Pa. 420, 98 Am. Dec. 356. The landlord, having resumed the occupancy of part of the premises without the consent of the tenant, cannot claim an apportioned rent for the rest." The case of In re Graebing Drug & Distributing Co., 1 F.(2d) 397, decided in the District Court for the Western District of Pennsylvania, simply reasserts the doctrine that a landlord who takes possession of the premises cannot claim rent for the balance of the term.

[11] But the court below, in directing the lessor to turn over to the trustee the Liberty bonds which it held as security, did not require it to turn over the total amount of the bonds it originally received, but that amount, less the sum of $625, which the receiver of the bankrupt had realized from the sale of certain fixtures and equipment located in the premises occupied by the lessee in Pittsburgh by virtue of the lease of July 19, 1921, and upon which fixtures the lessor had a lien under the Pennsylvania rent statute. In that connection it is to be observed that the lease expressly provided: "The lessor may at the lessor's option (in addition to and not in exclusion of any other right or remedy given or granted hereunder) enforce any provisions of law of the state in which the demised premises are situated, governing the relation of landlord and tenant, with the same effect as though the right to enforce such provisions were herein specifically set forth."

Under that express agreement it is also entirely immaterial whether the law of New York in any way governed the personal covenants of the lease; and the court below committed no error in directing the lessor to turn over to the trustee the Liberty bonds after permitting him to deduct the sum of $625

realized from the sale of the distrained property.

[12, 13] Where a claimant submits his claim to the jurisdiction of the bankruptcy court, he thereby consents to the jurisdiction of the court to decide any defenses that may be lawfully interposed. In re Dernburg (C. C. A.) 5 F.(2d) 37. And his rights must be determined according to the Bankruptcy Act. Bankruptcy proceedings must be administered in accordance with the Bankruptcy Act and general orders, not under any broad unlimited equity power. Bardes v. Bank, 20 S. Ct. 1000, 178 U. S. 524, 44 L. Ed. 1175; Westall v. Avery, 171 F. 626, 96 C. C. A. 428; In re Judith Gap Commercial Co. (C. C. A.) 5 F.(2d) 307.

Before concluding this opinion, it should be said that, in the brief submitted to this court on behalf of the appellant, it is said in the statement of facts which it contains that both the referee and the District Court overlooked the fact that at the time of the filing of the petition in bankruptcy there had accrued rent amounting to $1,250 under the first lease, to secure the payment of which the Liberty bonds were deposited. The idea is, as we infer, that the appellant claims it is entitled to be reimbursed out of the security, not only the $625 which the District Court authorized, but an additional sum of $625 which was the balance of the past-due rent.

It is enough to say that the question suggested by the statement in the brief is not set forth in the petition to revise, and that it is an elementary rule of procedure that the petition for review must set out the matters of law we are asked to review. In re Taft, 133 F. 511, 66 C. C. A. 385. The petition to revise was drawn upon the theory that the petitioner was entitled to retain in its possession the entire amount of the bonds deposited, and that there was no right to deduct even the $625 which the District Court deducted. The petition to the District Court for an order revising and reversing the order of the referee was drawn along identically the same lines.

We do not desire to be understood, however, as intimating that, if the petition to revise had directly raised the question, the decision of this court would have been different. The deduction of $625 was made because the laws of Pennsylvania give the landlord priority for one year's rent *from the proceeds of the sale of distrained goods.* As to the balance of rent due the landlord must prove as a general creditor.

Order affirmed.

12 F.(2d)—6